BEASTON2 



IN THE COURT OF APPEALS, THIRD DISTRICT OF TEXAS,



AT AUSTIN




 





NO. 3-92-238-CV





TERRI BEASTON, 



 APPELLANT


vs.





STATE FARM LIFE INSURANCE COMPANY


AND TED H. HEATON, III,



 APPELLEES



 







STATE FARM LIFE INSURANCE COMPANY


AND TED H. HEATON, III, 



 APPELLANTS


vs.





TERRI BEASTON,



 APPELLEE



 




FROM THE DISTRICT COURT OF TRAVIS COUNTY, 201ST JUDICIAL DISTRICT



NO. 391,831, HONORABLE JOSEPH H. HART, JUDGE PRESIDING



 




 Terri Beaston filed suit against State Farm Life Insurance Company and its agent,
Ted H. Heaton III (collectively "State Farm" unless necessary for clarity), for life-insurance
benefits under a policy insuring Terri Beaston's deceased husband, David Beaston.

 Trial was to a jury. At the conclusion of the evidence, the trial court granted Terri
Beaston an instructed verdict, finding that coverage existed under the life-insurance policy. The
court found that the policy was ambiguous and that State Farm should have credited Terri Beaston
with dividends that would have cured the policy lapse asserted by State Farm. The jury found
State Farm guilty of unfair and deceptive insurance practices, which caused Terri Beaston mental
anguish.

 The trial court rendered judgment in favor of Terri Beaston for the policy benefits,
prejudgment interest, a twelve percent delay penalty, and attorney's fees. However, the trial court
disregarded the jury's mental-anguish damages finding. Both parties bring limited appeals to this
Court.

 Terri Beaston argues on appeal that the judgment is correct in awarding policy
benefits, interest, the delay penalty, and attorney's fees, but that the trial court should have
awarded mental-anguish damages and treble damages, based on the jury verdict. She also
contends that the trial court calculated the attorney's fees incorrectly.

 State Farm brings a separate limited appeal on the basis that the trial court erred
in awarding policy benefits because the clear and unambiguous policy provisions compel the
conclusion that on the date of death, David Beaston's life insurance policy had lapsed for
nonpayment of premiums.

 We will modify the judgment of the district court, and as modified, we will affirm.



THE CONTROVERSY




A.  Factual Background

 In 1982, Ted Heaton, an agent with State Farm, contacted the Beastons regarding
the purchase of insurance. The Beastons first placed their homeowners' and automobile insurance
with Ted Heaton. Because of the business relationship that had developed, Terri and David
Beaston contacted Ted Heaton when they decided to obtain life insurance. The Beastons told Ted
Heaton that their primary concern was financial security.

 Ted Heaton sold the Beastons graded-premium whole life policies. Terri Beaston's
policy was issued without any problems with an effective date of August 2, 1982. David
Beaston's policy was delayed because State Farm considered his job hazardous. Before State
Farm would issue David Beaston's policy with the accidental death benefit he requested, he had
to agree to a higher premium. His policy was issued on August 31, 1982, but State Farm
backdated the effective date by three days to August 28th.

 In June 1983, the Beastons started having financial problems. About this same
time, their premiums increased. Their premium payments became erratic. The Beastons would
miss payments. State Farm would send lapse notices. The policies would go into their thirty-one
day grace periods. The Beastons would catch up. The policies would be reinstated. Then, the
cycle would start over again. Ted Heaton was aware of the Beastons' financial problems and was
in frequent contact with them about their late premiums. Terri Beaston periodically made
payments on both policies.

 The monthly premium payment on David Beaston's policy due on December 28,
1983, was not paid. The thirty-one day grace period ran from December 28, 1983, to January
28, 1984. On January 31, 1984, the totally unexpected happened: David Beaston was killed in
a one-car accident. When Terri Beaston called on State Farm to pay the life-insurance policy
benefits, State Farm refused on the basis that David Beaston's policy had lapsed on January 28th,
three days before his death.

 Terri Beaston filed suit against State Farm and its agent, Ted Heaton, asserting
claims for breach of contract, unfair or deceptive insurance practices under article 21.21 of the
Texas Insurance Code (the "Code"), Tex. Ins. Code Ann. art. 21.21 (West 1981 & Supp. 1993),
and false, misleading, or deceptive acts under the Deceptive Trade Practices--Consumer Protection
Act ("DTPA"), Tex. Bus. & Com. Code Ann. §§ 17.41-63 (West 1987 & Supp. 1993).



B.  Contentions of the Parties at Trial


 Terri Beaston contended that she was misled by Ted Heaton and State Farm. She
contended that from the outset she was confused about different types of life insurance, i.e., whole
life versus term. Ted Heaton admitted that this type of confusion was common and that part of
his job was to explain the differences between "whole" life and "term" life insurance policies. 
Ted Heaton testified that he explained the different types of insurance to the Beastons and even
tried to dissuade them from purchasing accidental death coverage because he did not think it was
a good buy for them. He testified that the only effect his advice had on the Beastons was to
irritate them.

 The record demonstrates that, with regard to life insurance, the Beastons' primary
concern was financial security. Terri Beaston told Ted Heaton that the Beastons had difficulty
in the past with a policy they purchased and let lapse. The Beastons wanted policies that would
protect their family if something happened to either one of them, and they wanted every possible
protection against lapses.

 Terri Beaston contended that her husband's life-insurance policy was backdated by
three days which resulted in the expiration of the grace period by the same three days prior to his
death. State Farm countered by showing that, rather than the Beastons losing three days of
coverage, State Farm actually extended the first twenty-eight days of life-insurance coverage at
no premium charge.

 Finally, Terri Beaston alleged that State Farm misled her about the date coverage
would end and gave her inadequate notice of the policy lapse. Because of their financial troubles,
the Beastons' payments were sporadic and often late. However, it was Terri Beaston's
understanding that each payment extended coverage by thirty-one days. Terri Beaston made a
premium payment on David Beaston's policy on January 4, 1984, which she believed extended
the coverage for thirty-one more days. State Farm received this payment on January 9th. From
that date until the day coverage lapsed on January 28th and the day David Beaston died on January
31st, State Farm did not notify Terri Beaston that coverage had ended or that her payment was
insufficient. Evidence was presented at trial that this failure was inconsistent with State Farm's
practice on other insurance coverage and with State Farm's practice on Terri Beaston's own life
insurance policy. State Farm countered that, shortly before David Beaston's death, the couple had
been having marital difficulties and were on the verge of separation and divorce. State Farm and
Ted Heaton alleged that Terri Beaston intended to allow David's life-insurance policy to lapse out
of spite and vindictiveness.



C.  Instructed Verdict


 At the end of all the evidence, the trial court granted an instructed verdict for Terri
Beaston on the question of life-insurance coverage. The trial court found, as a matter of law, that
the policy was ambiguous and that State Farm should have credited David Beaston's policy with
a dividend, which would have cured the asserted lapse. However, the trial court declined to
verbally instruct the jury that Terri Beaston was entitled to coverage.



D.  Jury Findings


 The jury found that State Farm had engaged in unfair or deceptive acts prohibited
by article 21.21 of the Code and that such conduct was a producing cause of damages to Terri
Beaston. (1) The jury refused to find that State Farm and Ted Heaton committed any false,
misleading, or deceptive act or practice; any unconscionable action or course of action;
negligence; or gross negligence. The jury also refused to find that State Farm waived any lapse
under the policy. The jury's "No" response to Question 3 as to unconscionable conduct forced
it to answer Question 4 "N/A," which inquired as to knowing conduct. Its "Yes" answer to
Question 1 allowed it to answer Question 8 on damages, and it awarded $200,000 for Terri
Beaston's mental anguish in the past. Unaware that the trial court had found coverage as a matter
of law, the jury did not award Terri Beaston policy benefits as damages. The jury also awarded
Terri Beaston attorney's fees of forty percent of her "recovery," increased in the event of an
appeal.



E.  Judgment and Amended Judgment


 The trial court initially rendered judgment for Terri Beaston for approximately
$2,000,000. Based on the earlier instructed verdict, the trial court awarded life-insurance policy
benefits of $250,000. The trial court initially agreed with Terri Beaston that the jury's failure to
award policy benefits as damages was immaterial and that policy benefits were damages caused
by State Farm's unfair conduct, as a matter of law. Thus, the trial court trebled the policy
benefits, along with prejudgment interest. The trial court also rendered judgment for attorney's
fees of forty percent of Terri Beaston's total recovery. However, the court refused to include the
jury's mental-anguish award. The court held that these damages were not recoverable without a
finding that the defendants acted "knowingly."

 In response to motions by both sides seeking reconsideration, the trial court then
signed an amended judgment for $598,000 that omitted the treble damage award, reaffirmed the
denial of mental-anguish damages, and reduced attorney's fees to forty percent of Terri Beaston's
damages.



F.  Appellate Points of Error


 On appeal, Terri Beaston urges six points of error. She complains that the trial
court erred in:



(1) disregarding the jury's award of mental-anguish damages;


(2) failing to award prejudgment interest on the mental-anguish damages;


(3) failing to award mandatory treble damages on the mental-anguish damages;


(4) failing to award treble damages on the life-insurance policy benefits;


(5) failing to award treble damages on prejudgment interest; and


(6) failing to award attorney's fees on the total recovery, and instead, basing
attorney's fees on the damages awarded.



 State Farm and Ted Heaton bring a single point of error in their separate appeal. 
They argue that the trial court erred in finding that: (1) the dividend provisions of the life-insurance policy were ambiguous as a matter of law, and (2) there was life-insurance coverage on
the date of David Beaston's death.



DISCUSSION



I.



Mental-Anguish Damages



 In her first point of error, Terri Beaston attacks the action of the trial court in
refusing to award mental-anguish damages. The record indicates that the basis for the trial court's
ruling was the failure of Terri Beaston to obtain a jury finding that State Farm engaged in unfair
and deceptive insurance practices "knowingly."

 The trial court declined to allow mental-anguish damages without proof of
"knowing" misconduct on the basis of the decision in Luna v. North Star Dodge Sales, Inc., 667
S.W.2d 115 (Tex. 1984). The starting place in this discussion, then, is Luna and its applicability
to the facts of the instant cause.

 Luna was primarily a DTPA lawsuit (2) in which the plaintiff, Luna, recovered
damages regarding a dispute over the sale and purchase of an automobile. One of the elements
of damages recovered by Luna was mental anguish. On appeal to the San Antonio Court of
Appeals and ultimately to the Texas Supreme Court, the primary issue concerned the prerequisite
jury findings necessary to sustain a mental-anguish damage award. The supreme court had
previously held in Brown v. American Transfer & Storage Co., 601 S.W.2d 931, 939 (Tex.
1980), that the DTPA permitted recovery as actual damages of all those damage elements
otherwise recoverable at common law. At the time of the Luna decision, the recovery at common
law of mental-anguish damages required establishment of (1) an intentional tort, gross negligence,
or willful and wanton disregard, or (2) physical injury. See Farmers & Merchants State Bank v.
Ferguson, 617 S.W.2d 918, 921 (Tex. 1981). The San Antonio Court in Luna determined that
a jury finding of "knowing" misconduct did not meet the common-law standard of "willful"
misconduct and, therefore, denied any mental-anguish damages. In reversing the San Antonio
Court, the supreme court held that regarding the defendant's mental state, conduct such as "gross
negligence," "knowingly," "willful," and "intentional" lie on a continuum with gross negligence
being the lowest mental state and intentional being the highest and, consequently, "knowing"
misconduct lying somewhere in between. Luna, 667 S.W.2d at 118. The supreme court
concluded that, since at common law mental-anguish damages had been upheld where the
tortfeasor was grossly negligent, it followed that, in a DTPA case, a jury finding of "knowing"
misconduct was sufficient to sustain a mental-anguish award. See id. at 117-18. On remand, the
San Antonio Court, stated that "[d]amages for mental anguish, therefore, are recoverable when
there is proof of willful tort, willful and wanton disregard, knowing conduct, gross negligence,
or accompanying physical injury." North Star Dodge Sales, Inc. v. Luna, 672 S.W.2d 304, 306 
(Tex. App.--San Antonio 1984, writ dism'd) (emphasis added). Thus, although the "knowing"
misconduct finding in Luna was a threshold prerequisite for recovery of mental-anguish damages,
the San Antonio Court noted that accompanying physical injury served as a threshold prerequisite
as well. Id.

 The decision in Luna was greatly impacted by the supreme court's opinion in St.
Elizabeth Hospital v. Garrard, 730 S.W.2d 649 (Tex. 1987). In Garrard, the supreme court
recognized a cause of action for negligent infliction of emotional distress and abolished the
physical-injury or physical-manifestation requirement for the recovery of mental-anguish damages. 
Id. at 650. (3)

 Following Garrard, two decisions from this Court questioned whether a finding
of "knowing" misconduct was still a prerequisite to recovering mental-anguish damages in an
unfair-insurance-practices case. See State Farm Fire & Casualty Co. v. Gros, 818 S.W.2d 908,
915 (Tex. App.--Austin 1991, no writ); HOW Ins. Co. v. Patriot Fin. Servs., Inc., 786 S.W.2d
533, 543 (Tex. App.--Austin 1990, writ denied).

 Then, in Milt Ferguson Motor Co. v. Zeretzke, 827 S.W.2d 349, 356 (Tex.
App.--San Antonio 1991, no writ), the issue presented was whether "to recover mental anguish
damages in a DTPA case, a plaintiff must plead and prove either that the wrongful action which
caused the suffering was willful or committed knowingly, and, further, that a physical injury
resulted." After a detailed discussion of Luna, Garrard, and other cases, the San Antonio Court
of Appeals concluded:



 To hold that mental anguish damages are only recoverable upon pleading
and proof that the tort complained of was committed willfully or knowingly, would
be to require a higher standard of proof, contrary to the holdings of Sanchez,
Baptist Hosp. of Southeast Texas, Inc. v. Baber, and St. Elizabeth Hosp. v.
Garrard.


 In light of our analysis of these cases we believe that appellant's reliance
on Luna; Brown v. American Transfer & Storage Co.; and Ybarra v. Saldana, is
misplaced, and these cases are no longer the law with respect to the necessity to
plead and prove that an act was committed willfully or knowingly to recover
damages for mental anguish.


Id. at 357.

 However, while the instant appeal was pending in this Court, the supreme court
handed down its opinion in Boyles v. Kerr, 855 S.W.2d 593 (Tex. 1993). State Farm argues that
Boyles v. Kerr restored the validity of the Luna decision. There can be no doubt that the majority
of the supreme court in Boyles v. Kerr explicitly overruled a fundamental portion of the Garrard
decision. The court abolished Garrard as controlling authority for the premise that a generalized
duty exists not to negligently inflict emotional distress on others. Id. at 595. The court in Boyles
v. Kerr, however, explicitly upheld and reaffirmed the portion of Garrard that abolished the
physical-injury or physical-manifestation requirement for recovery of mental-anguish damages. 
Id. at 598. In dicta, the supreme court stated:



Also, mental anguish damages may not be recovered under the Texas Deceptive
Trade Practices Act, Tex. Bus. & Com. Code §§ 17.41-17.63, absent proof of a
willful or grossly negligent violation. See Luna v. North Star Dodge Sales, Inc.,
667 S.W.2d 115 (Tex. 1984); Duncan v. Luke Johnson Ford, Inc., 603 S.W.2d
777 (Tex. 1980).



Id.

 Thus, State Farm contends that following Boyles v. Kerr, Luna has been restored
as controlling authority for the proposition that absent a "knowing" jury finding, Terri Beaston
is not entitled to recover mental-anguish damages. We disagree.

 Luna does not control the disposition of this appeal for two basic reasons. First,
Luna is controlling authority only for causes of action brought pursuant to the DTPA. Here, Terri
Beaston's jury finding on liability is premised on a cause of action brought pursuant to article
21.21 of the Code. State Farm argues that no substantial differences exist between the DTPA and
article 21.21 of the Code and, therefore, we should extend the reach of Luna to include the
present case. We disagree.

 While we recognize that the DTPA and article 21.21 of the Code are interrelated
statutes and share a common history, the general scope and purpose of the statutes are quite
different. (4) Generally, violations of article 21.21 of the Code occur from conduct that is
proscribed by the statutes, rules, and regulations of the State Board of Insurance. These
proscriptions involve the entire insurance industry. Insurance companies and their personnel are
presumed to know the legal parameters of the rules of the Code, unlike businesses affected by the
DTPA that are not regulated by any state agency. Therefore, it is difficult for an insurance
company to argue that its violation of article 21.21 of the Code is just an "innocent mistake."

 Second, Luna was decided almost a decade ago. In the intervening ten years, the
scope and thrust of the Luna decision have been refined and changed. Luna declared that a DTPA
claimant could recover mental-anguish damages if (1) there was egregious conduct on the part of
the defendant, or (2) there was a physical injury. In 1987 in Garrard, the supreme court
abolished the physical-injury requirement. 730 S.W.2d at 650. (5)

 While the supreme court in Boyles v. Kerr held that mental-anguish damages can
no longer be recovered for negligent infliction of emotional distress, the court made clear that its
"decision does not affect a claimant's right to recover mental anguish damages caused by
defendant's breach of some other legal duty." 855 S.W.2d at 597. In this case, the "other legal
duty" was established by the Texas Legislature when it enacted article 21.21 of the Code. That
duty forbids any person in the business of insurance from engaging in unfair insurance practices.

 The supreme court also recognized that a "special relationship" between the parties
"may give rise to a duty which, if breached, would support an emotional distress award." 855
S.W.2d at 600. In Arnold v. National County Mutual Fire Insurance Co., 725 S.W.2d 165, 167
(Tex. 1987), the supreme court recognized that a "special relationship" exists between an insurer
and insured which "arises out of the parties' unequal bargaining power and the nature of insurance
contracts . . . ." Because of this special relationship, the court in Arnold held that insurers owe
their insureds a duty of good faith and fair dealing. Id.

 Therefore, applying all of the foregoing authorities to the facts of this case, we hold
that it was not necessary for Terri Beaston to establish a "knowing" violation in order to recover
the jury-awarded mental-anguish damages--the jury finding establishing that State Farm breached
a legal duty under article 21.21 of the Code is all that is required for Terri Beaston to recover
mental-anguish damages.

 State Farm argues, in addition, that there is insufficient evidence in the record to
sustain the jury's finding awarding mental-anguish damages. When reviewing a jury verdict to
determine the factual sufficiency of the evidence, we must consider and weigh all the evidence and
should set aside the judgment only if it is so contrary to the overwhelming weight of the evidence
as to be clearly wrong and unjust. Cain v. Bain, 709 S.W.2d 175, 176 (Tex. 1986); In re King's
Estate, 244 S.W.2d 660, 661 (Tex. 1951); see also Pool v. Ford Motor Co., 715 S.W.2d 629
(Tex. 1986); see generally William Powers, Jr. & Jack Ratliff, Another Look at "No Evidence"
and "Insufficient Evidence," 69 Tex. L. Rev. 515 (1991).

 Terri Beaston testified that she was seeking mental-anguish damages for the mental
stress that she had suffered, for depression, for being upset, and for having to put her life on hold
until this controversy was resolved. She attributed this suffering to the conduct of State Farm. 
In describing the emotional impact of State Farm's conduct, Terri Beaston testified:



It means a whole lot to me. David meant a whole lot to me. And to have
something like this over my head for so long, it's been very, very trying on me and
I've been angry, I've been hurt, I've been upset for a good long period over this. 
And I felt like if Ted Heaton had done what he should have done as an agent, then
I wouldn't be here today.



 The jury also heard and observed the aggressive defense tactics used by State Farm,
e.g., attacks on the character of the Beastons and extensive inquiry into alleged marital difficulties
and discord. We note that mental-anguish damages are uniquely the province of jurors who are
best suited to determine, by referring to their own experiences, the degree to which the plaintiff
has suffered compensable mental anguish. Garrard, 730 S.W.2d at 654; GAB Business Servs.,
Inc. v. Moore, 829 S.W.2d 345, 350 (Tex. App.--Texarkana 1992, no writ); National Union Fire
Ins. Co. v. Dominguez, 793 S.W.2d 66, 73 (Tex. App.--El Paso 1990, writ denied); City of
Ingleside v. Kneuper, 768 S.W.2d 451, 460 (Tex. App.--Austin 1989, writ denied). After
reviewing all of the evidence in this record, we conclude that sufficient evidence exists to support
the jury's mental-anguish damage finding. Therefore, having concluded that the trial court erred
in disregarding the jury's mental-anguish damage award, we sustain Terri Beaston's first point
of error.



II.



Life-Insurance Policy Benefits



 State Farm urges, in its separate appeal, a single point of error that the trial court
erred in its directed verdict establishing life-insurance coverage at the time of David Beaston's
death.

 State Farm insured the life of David Beaston for the amount of $150,000, plus
$100,000 coverage for accidental death, by policy number 6,285,400, dated August 28, 1982. 
It is undisputed that this policy was sold by Ted Heaton. David Beaston was killed in an
automobile accident on January 31, 1984. At that time, the policy was in monthly-pay status with
the premiums due on the 28th day of each month. The policy provided for a thirty-one day grace
period. Terri Beaston did not pay the premium due December 28, 1983, during its grace period.

 The policy lapsed for non-payment of premiums, and coverage ceased at the end
of the grace period at midnight on January 28, 1984, three days before David Beaston's death. 
During trial, the district court concluded that the life-insurance policy provisions were ambiguous,
as a matter of law. The trial court granted Terri Beaston an instructed verdict on the basis that
the dividend provisions of the policy could be read to provide funds to pay premiums and thus
extend coverage past the date of David Beaston's death.

 State Farm attacks this finding and the resulting directed verdict. The
determination of whether a contract is ambiguous in light of its wording and the surrounding
circumstances is a question of law. Yancey v. Floyd West & Co., 755 S.W.2d 914, 917 (Tex.
App.--Fort Worth 1988, writ denied). An insurance policy provision is "patently ambiguous"
when two or more reasonable interpretations exist. Barnett v. Aetna Life Ins. Co., 723 S.W.2d
663, 665 (Tex. 1987); Glover v. National Ins. Underwriters, 545 S.W.2d 755, 761 (Tex. 1977). 
When a policy is open to more than one reasonable construction, a court must adopt the
construction that favors coverage and must strictly construe the language against the insurer. 
National Union Fire Ins. Co. v. Hudson Energy Co., 811 S.W.2d 552, 555 (Tex. 1991); Barnett,
723 S.W.2d at 666; Blaylock v. American Guarantee Bank Liab. Ins. Co., 632 S.W.2d 719, 722
(Tex. 1982); Ramsay v. Maryland Am. Gen. Ins. Co., 533 S.W.2d 344, 349 (Tex. 1976).

 The trial court found the policy was ambiguous on the issue of whether any
dividends were available to avoid the policy lapse. The critical issue is whether the policy
reasonably could be read to allow a pro-rated dividend at death that would have been sufficient
to pay the overdue premium. If the policy reasonably can be read this way, we are required to
sustain the trial court's interpretation.



The key provisions of the policy state:


Dividend at Death. A dividend for the period from the start of the policy year to
the Insured's death will be part of the proceeds.


Accumulations to Avoid Lapse. If a premium has not been paid by the end of its
grace period, any available dividend accumulations will be used to pay all or part
of that premium.



The trial court determined that one could reasonably read these provisions to mean that a pro-rated
dividend at death would be paid. The dividend-at-death clause is mandatory; it says a dividend
"will be part of the proceeds." (6)

 The undisputed evidence showed that State Farm did declare dividends on this class
of policies. State Farm's representative, Joe Bourn, admitted that if the insurer had credited
David Beaston's policy with a dividend at death, the pro-rated amount would have been more than
enough to pay the overdue premium. Based on this evidence and the policy language set out
above, the trial court determined that the policy could reasonably require State Farm to apply a
pro-rated dividend to David Beaston's policy, which would have cured the lapse.

 Once the insured offers a reasonable interpretation of the policy, any contrary
interpretation must be rejected. This is true even if the contrary interpretation is itself reasonable,
or even more reasonable. Hudson Energy, 811 S.W.2d at 555; Barnett, 723 S.W.2d at 666;
Glover, 545 S.W.2d at 761; Continental Casualty Co. v. Warren, 254 S.W.2d 762, 763 (Tex.
1953).

 State Farm attacks the trial court's policy interpretation with several arguments and
definitions of policy terms which, it contends, renders the trial court's construction unreasonable. 
We have reviewed State Farm's contentions and, while we regard its policy construction to be
reasonable, we are unable to say that it renders the trial court's interpretation unreasonable.

 Finally, State Farm uses a hypothetical illustration to demonstrate that applying the
trial court's policy interpretation would mean that a life-insurance policy could never lapse for
nonpayment of premiums. (7) We note that the hypothetical example requires the application of an
"accepted actuarial principle" that is unstated within the insurance contract between the parties. 
More importantly, the hypothetical example does not fit the facts of the instant cause. The
testimony of Bourn established that, at David Beaston's death, a pro-rated dividend would have
cured the policy lapse. Therefore, under the facts of this case, the dividend-at-death provision
would have been applied only one time to cure the policy lapse. We uphold the trial court's
finding that the policy provisions were ambiguous and the trial court's construction in favor of
the insured to create coverage. State Farm's single point of error is overruled.



III.



Damages



1.  Actual Damages

 Following its determination of liability, the jury determined Terri Beaston's
damages. The jury awarded $200,000 for past mental anguish, but determined $0 for the element
of policy benefits. (8)

 On motion for judgment, Terri Beaston contended that, under the liability finding
pursuant to article 21.21 of the Code, she was entitled to mandatory treble damages of the policy
benefits because those damages were awarded automatically, as a matter of law, for a Code
violation and the jury's finding of $0 was immaterial. Initially, the trial court agreed and rendered
judgment accordingly. However, on reconsideration the trial court awarded the policy benefits,
but refused to award Terri Beaston the benefits under article 21.21 of the Code. In her fourth
point of error, Terri Beaston contends the trial court erred in this regard. She relies on Vail v.
Texas Farm Bureau Mutual Insurance Co., 754 S.W.2d 129 (Tex. 1988), for the proposition that
the policy benefits were damages resulting as a matter of law from these statutory violations.

 Although the language in Vail, 754 S.W.2d at 136, "[w]e hold that an insurer's
unfair refusal to pay the insured's claim causes damages as a matter of law in at least the amount
of the policy benefits wrongfully withheld," seems to support Terri Beaston's position, we are
constrained by a jury verdict that awards $200,000 in actual damages for mental anguish and $0
for policy benefits. (9)

 Our view of things might be different were we not restoring full jury damages to
Terri Beaston pursuant to article 21.21 of the Code. However, because of our action in this
regard, we are unwilling to conclude that the policy benefits, as a matter of law, should be
awarded in addition to mental-anguish damages pursuant to article 21.21. Thus, we uphold the
trial-court judgment in its entirety on the issue of insurance-policy benefits including statutory
penalties and attorney's fees and overrule Terri Beaston's fourth point of error.



2.  Mandatory Treble Damages--Prejudgment Interest

 In point of error two, Terri Beaston contends that the trial court should have trebled
the jury's award of mental-anguish damages, because treble damages are mandatory under the
applicable version of article 21.21 of the Code. See Gros, 818 S.W.2d at 916-18; Frank B. Hall
& Co. v. Beach, Inc., 733 S.W.2d 251, 263 (Tex. App.--Corpus Christi 1987, writ ref'd n.r.e.);
Rainey-Mapes v. Queen Charters, Inc., 729 S.W.2d 907, 915 (Tex. App.--San Antonio 1987, writ
dism'd). We agree. Point of error two is sustained.

 In her third point of error, Terri Beaston contends that the trial court also should
have awarded prejudgment interest at ten percent, compounded daily, on the jury's award for
mental anguish. See Cavnar v. Quality Control Parking, Inc., 696 S.W.2d 549, 554 (Tex. 1985). 
We agree and sustain point of error three.

 In her fifth point of error, Terri Beaston contends that any prejudgment interest
awarded on the actual damages should be trebled. We examined this issue recently in Celtic Life
Insurance Co. v. Coats, 831 S.W.2d 592 (Tex. App.--Austin 1992, writ granted). See also
Paramore v. Nehring, 792 S.W.2d 210, 212 (Tex. App.--Austin 1990, no writ). As we observed
in Celtic Life, the genesis of the problem is the imminently correct statement in Vail, that
"[p]rejudgment interest may not be awarded on punitive damages," 754 S.W.2d at 137 (citing
Cavnar, 696 S.W.2d at 555) (emphasis added). Equating treble damages with punitive damages,
the supreme court in Vail held "that the trial court improperly awarded prejudgment interest on
the trebled amount." 754 S.W.2d at 137.

 As we observed in Celtic Life and Paramore, under the trebling provisions of the
DTPA and article 21.21 of the Code, the claimant is entitled to treble the actual damages. Since
prejudgment interest on damages pursuant to article 21.21 of the Code is not interest eo nomine,
but rather is in the nature of actual damages, we concluded in Celtic Life that trebling the actual
damages (with prejudgment interest included) was permissible, while awarding prejudgment
interest on the trebled amount was prohibited. (10)

 Thus, under our holdings in Celtic Life and Paramore, we hold that the actual
damages under article 21.21 of the Code, including mental-anguish damages and prejudgment
interest, are subject to mandatory trebling. Accordingly, we sustain Terri Beaston's fifth point 

of error.



3.  Attorney's Fees


 In her sixth and final point of error, Terri Beaston contends that the trial court
erred in calculating the contingency attorney's fee awarded by the jury. In response to the
attorney's fees question, the jury awarded Terri Beaston's attorney a percentage of Terri Beaston's
total recovery. (11) However, Terri Beaston contends that in the final judgment, the district court
awarded attorney's fees as a percentage of the total damages, rather than as a percentage of the
total recovery. We agree.

 This issue is controlled by our recent decision in Great American Insurance Co.
v. North Austin Municipal Utility District, 850 S.W.2d 285 (Tex. App.--Austin 1993, writ
requested). In Great American, we noted that under article 21.21 of the Code a claimant was
entitled to recover "the amount of actual damages plus court costs and reasonable and necessary
attorneys' fees." Id. at 291 (quoting Code art. 21.21, § 16(b)(1)). We note that the Code
explicitly provides that attorney's fees shall be a recovery in addition to the actual damages
permitted by law. Our holding in Great American was to the effect that for causes of action under
article 21.21 of the Code, the attorney's fees should be calculated as Terri Beaston contends in
this case; that is, the contingency fee percentage should be calculated on the total recovery and
not on the total damages as found by the jury. Id. at 291. Therefore, we sustain Terri Beaston's
sixth point of error but only as to the amount of attorney's fees to be awarded on the actual
damages (mental anguish plus prejudgment interest, trebled) as found by the jury pursuant to
article 21.21 of the Code. We uphold the attorney's fees amount as calculated by the district court
in its final judgment because those fees were awarded on the insurance contract life-insurance
benefits and not as damages pursuant to article 21.21 of the Code.



IV.



CONCLUSION



 We affirm the final judgment of the district court awarding to Terri Beaston life-insurance policy benefits, prejudgment interest, twelve percent penalty, and attorney's fees.

 We modify the judgment of the district court to award the following additional
damages:

 (1) mental-anguish damages as found by the jury, plus prejudgment interest,
trebled;


 (2) attorney's fees of forty-five percent of the total recovery pursuant to article
21.21 of the Code; and


 (3) postjudgment interest and costs.

As modified, we affirm the judgment of the district court.



 

 Mack Kidd, Justice

[Before Justices Powers, Aboussie, and Kidd]

Modified and, as Modified, Affirmed

Filed: August 25, 1993

[Publish]
1.   The jury answered "yes" to the following question:



QUESTION 1
:



 Did State Farm or Ted Heaton engage in any unfair or deceptive act or
practice that was a producing cause of damages to Terri Beaston?


 "Unfair or deceptive act or practice" means any of the following:


(a) engaging in any act or series of acts that has the tendency to deceive an
average ordinary person, even though that person may have been ignorant,
unthinking, or gullible; or


(b) making or causing to be made any statement misrepresenting the terms,
benefits, or advantages of an insurance policy; or


(c) making or directly or indirectly causing to be made, any assertion,
representation, or statement with respect to insurance that was untrue,
deceptive, or misleading; or


(d) omitting any information or making any false implication or impression that
was either misleading or deceptive or had the capacity to be misleading or
deceptive; or


(e) making any misrepresentation relating to insurance.


 "Misrepresentation" means any of the following:


 (1) an untrue statement of a material fact; or 


 (2) any failure to state a material fact that is necessary to prevent the
statements made from being misleading, when these statements are
considered in the light of the circumstances under which they are
made; or


 (3) making any statement in such a manner or order as to mislead a
reasonably prudent person to a false conclusion of a material fact.
2.   In Luna, the plaintiff also alleged violations of the Texas Consumer Credit Code (Motor
Vehicle Installment Sales), the Truth-In-Lending Act, and Federal Reserve Board Regulations.
3.   The supreme court had earlier abolished the physical-manifestation requirement for recovery
of mental-anguish damages in wrongful-death cases in Moore v. Lillebo, 722 S.W.2d 683, 686
(Tex. 1986).

4. As we observed in Gros, 818 S.W.2d at 916:



The DTPA broadly declares unlawful any false, misleading, and deceptive acts or
practices in "any trade or commerce." DTPA §§ 17.45(6), 17.46(a). The
proscriptions of article 21.21 of the Insurance Code are directed at unfair or
deceptive trade practices but solely "in the business of insurance." Tex. Ins. Code
Ann. art. 21.21, §§ 1, 3 (1981 & Supp. 1991). 
5.   In addition, in Moore, the supreme court held that when mental anguish was the likely
product of the defendant's wrongful conduct, then mental-anguish damages were recoverable. 722
S.W.2d at 685. In Moore, the harm involved was a wrongful death.
6.   In contrast, the annual dividend clause was discretionary; it says that State Farm "may" pay
dividends each year.
7.   For example, if the time of death occurred past the end of the grace period and there were
ascertainable dividends that would provide an additional fifteen days of coverage, when those
fifteen days elapsed, then additional dividends would accrue on the fifteen days the policy was
extended. Since it is an accepted actuarial principle that all fractions of days are rounded up to
a full day, there would always be one additional day of coverage for each additional day of
ascertainable dividends. Dividends ascertained and calculated in this manner would always stretch
coverage to the date of death, regardless of when payment of premiums stopped. Coverage would
never end and payment of premiums would be unnecessary.
8.   The damage issue was as follows:



QUESTION 8:


 What sum of money, if any, if paid now in cash, would fairly and
reasonably compensate Terri Beaston for her damages, if any, that resulted from
such conduct?


 In answering questions about damages, answer each question separately. 
Do not increase or reduce the amount in one answer because of your answer to any
other question about damages. Do not speculate about what any party's ultimate
recovery may or may not be. Any recovery will be determined by the court when
it applies the law to your answers at the time of judgment.


 Answer separately in dollars and cents, if any, for each of the following
elements of damages.


(a) Policy Benefits: $     -0-     


(b) Mental Anguish in the past: $200,000.00
9.   Perhaps this result occurred, as Terri Beaston argues, because the trial court refused to
verbally instruct the jury that policy coverage was determined in her favor as a matter of law. 
However, Terri Beaston does not urge a point of error challenging such action by the trial court
and, therefore, this complaint is not before us for review.
10.   As we stated in Celtic Life:



 In fact, there is no conflict between Vail and Paramore; although the
"bottom line" amount of damages recovered may be the same, the process is
distinguishable. The proper process for calculating treble damages under the
DTPA without violating the prohibition of Vail is to (1) calculate pre-judgment
interest on the amount of damages assessed in the verdict, (2) add pre-judgment
interest to the assessed damages to arrive at the total amount of "actual damages,"
then (3) treble that sum as appropriate. 


831 S.W.2d at 599.
11.   We note that State Farm did not object to this issue and that the issue was submitted
pursuant to a pattern jury charge. The exact question answered by the jury was as follows:



QUESTION 10:


 What is a reasonable fee for the necessary services of Terri Beaston's
attorneys in this case, stated as a percentage of Terri Beaston's recovery?


 Answer by stating a percentage.


(a) through trial  40 %


(b) if there is an appeal to the Court of Appeals  45 %


(c) if there is an appeal to the Supreme Court of Texas  50 %