John **BALDERAMA** & Dolores Balderama, Petitioners,

v.

**WESTERN CASUALTY LIFE INSURANCE CO.,**
Respondent.

No. D–0355.

Supreme Court of Texas.

Oct. 23, 1991.

Rehearing Overruled April 8, 1992.

Malcolm C. Halbardier, San Antonio, Robert D. Huerta, Irving, for petitioners.

Daniel A. Bass and Jane E. Bockus, San Antonio, for respondent.

## OPINION

HECHT, Justice.

Article 3.70–2(E) of the Texas Insurance Code prohibits issuance of an accident and sickness insurance policy in this state which covers newborn children but limits or excludes that coverage for a period of time or for congenital defects. At issue in this case is whether insurance documents issued to John and Dolores Balderama, some covering their newborn children and some not, must be construed as a single policy and thus in violation of article 3.70–2(E). The district court concluded that the documents constituted two separate policies, and the court of appeals agreed. 794 S.W.2d 84. We disagree, and reverse and remand this case to the district court for further proceedings.

Through an agent, the Balderamas applied for insurance to Western Casualty Life Insurance Co. Using Western's application form for "Accident/Health and Life" insurance, the agent listed the Balderamas and their three children by name in the column provided for that purpose. Filling in the blanks, he showed the "Policy Form" as "CMH–2", the "Aggregate Amount" as "$100,000", the "Deductible Amount" as "$500.00", and "Endorsement Form(s)" as "OP–ACC–DD" with the number "500" written below. The "Total Premium Paid for All Members for one month" was shown as "$156.70", which was indicated elsewhere on the form to be the sum of $138.30 and $18.40. With this and other information filled out, the application form was sent to Western.

Western received and accepted the application, and returned an envelope containing four documents to the Balderamas. One was a copy of the application, now endorsed as approved, and adding a "Policy No." of "45085". The other three documents were entitled "Catastrophic Medical Hospital Policy" (Form CMH–2), "Accident Policy" (Form OP–ACC–DD), and "Endorsement" (Form EN.ACC.2).

The "Hospital Policy" specifies that it insures the applicant named in the "Policy Schedule", that is John Balderama, and "all other dependent members of [his] family, if any, named in the application". It does not cover newborn children. The "Policy Schedule", like the other pages of the "Hospital Policy", is marked "Form CMH–2". It lists the "policy number" as "45085", the "aggregate amount for each injury or sickness" as "$100,000", the "deductible" as "$500", and the "initial premium" as $156.70.

The "Accident Policy", a separate document, covers accidental injury to a limit of $500. It has no policy number but bears the printed form designation, OP–ACC–DD, listed in the application as "Endorsement Form(s)". It refers to but does not include a policy schedule naming the insured persons, but identifies them by reference to the application. It also provides:

However, in regard to any child born to the insured, such coverage is effective from the moment of birth and is not subject to any evidence of insurability or acceptance of such newborn child and will pay for congenital defects in such newborn child.

The other document in the envelope, entitled "Endorsement", contains no insuring clause but adds accidental injury, death and dismemberment coverage in same aggregate amounts as in the "Accident Policy". Like the "Hospital Policy", the document bears the policy number "45085".

A year after receiving these documents, the Balderamas had another child, Jessica, who from birth suffered serious health problems. The Balderamas presented Western with a claim for Jessica's medical expenses, which Western denied, asserting in relevant part that Jessica was not covered because she was not named in the application. The Balderamas then sued, alleging causes of action for breach of contract, negligence, breach of the duty of good faith and fair dealing, and violations of the Deceptive Trade Practices Consumer Protection Act and the Texas Insurance Code.

The district court, sitting without a jury, tried separately the issue of whether Jessica was insured by Western. The court found that Western issued two separate policies to the Balderamas—the "Hospital Policy" with its "Endorsement", and the "Accident Policy"; that only the "Accident Policy" provided newborn coverage; and that its newborn clause did not apply to the "Hospital Policy". In accordance with its findings, the district court rendered judgment adverse to the Balderamas on their contract claim and severed it from their remaining claims. In the court of appeals, and now to us, the Balderamas complain of the merits of the district court's decision, and Western complains that the district court abused its discretion in severing the judgment on the contract claim from the other causes of action.[1]

1. Western complains in its own application for writ of error that the district court abused its discretion in severing the Balderamas' contractual claim from their other claims. In view of

The Balderamas contend that Western's insurance documents comprise a single policy. They argue that the newborn clause in the "Accident Policy" applies not only to the coverage provided by that document but also to the coverage provided by the "Hospital Policy". Alternatively, they argue that if Western's single policy does not cover Jessica to the same extent as the Balderamas' other children, the policy violates article 3.70–2(E) of the Insurance Code. Western contends that its documents constitute two policies, as found by the district court. Alternatively, Western argues that even if the documents are held to be one policy, they are one policy providing separate coverages; that the newborn clause applies only to the coverage provided by the "Accident Policy"; and that both policies are therefore legal.

We conclude that Western issued a single policy. While the two purported "policies" contain separate insuring clauses, definitions and provisions, and do not refer to each other, the "Accident Policy" cannot stand on its own. It lacks a "Policy Schedule" to which it refers. It has no policy number or any other separate designation. The application completed by Western's agent indicates the "Accident Policy" form to be an endorsement. Western accepted and approved that application. Western assigned the Balderamas a single policy number and charged them a single monthly premium. Western chose the form of the documents, and delivered those documents to the Balderamas as a set. Taken as a whole, Western's documents constitute a catastrophic medical hospital policy with endorsements for accident coverage. At best, whether Western's documents constitute a single policy is an ambiguity which, in these circumstances, must as a matter of law be resolved against Western, and in favor of coverage. *Barnett v. Aetna Life Insurance Co.,* 723 S.W.2d 663 (Tex.1987).

As a single policy of insurance, the documents here afford coverage to newborn infants only to the extent provided in the "Accident Policy", that is, $500 accidental injury coverage. Far more extensive cov-

our disposition of this case, we need not address

erage is provided to the Balderamas' other children named in the application. A regulation of the State Board of Insurance promulgated in connection with article 3.70–2(E) of the Insurance Code explains:

> If the policy provides accident and sickness coverage for newborn children, such coverage shall be at least as comprehensive as the coverage provided under the policy for other children for loss as a result of an accident or sickness.

28 Tex.Admin.Code § 3.3403(c); *see also* §§ 3.3401–.3402; *cf.* Tex.Ins.Code art. 3.70–1(E). Because Western issued the Balderamas a policy in violation of Texas law, Western must cover Jessica's medical expenses to the same extent as its policy covers the other Balderama children. *See Unigard Sec. Ins. Co. v. Schaefer,* 572 S.W.2d 303 (Tex.1978).

Accordingly, we reverse the judgment of the court of appeals and remand this cause to the district court for further proceedings consistent with this opinion.

CORNYN, J., not sitting.