**STATE FARM LIFE INSURANCE COMPANY and Ted H. Heaton, III, Petitioners,**

v.

**Terri BEASTON, Respondent.**

No. D–4454.

Supreme Court of Texas.

Argued May 5, 1994.

Delivered June 29, 1995.

Rehearing Overruled Oct. 27, 1995.

Larry G. Black and Ranelle M. Meroney, Austin, for petitioners.

Mark L. Kincaid, Joe K. Longley and Philip K. Maxwell, Austin, for respondent.

OWEN, Justice, delivered the opinion of the Court in which GONZALEZ, HECHT, CORNYN, and ENOCH, Justices, join.

PHILLIPS, Chief Justice, and SPECTOR, Justice, join in Parts III, IV, and V.

We are called upon to interpret the terms of a life insurance policy and to decide whether a plaintiff can recover mental anguish damages from an insurance company for a violation of Article 21.21 of the Texas Insurance Code absent a finding that the defendant acted knowingly. Because we hold that the plaintiff is not entitled to benefits under her husband's policy and that a finding of knowing conduct is required to recover mental anguish damages under Article 21.21, we reverse the judgment of the court of appeals, 861 S.W.2d 268, and render judgment that the plaintiff take nothing.

## I

In 1982, Terri and David Beaston bought life insurance policies from Ted Heaton, a State Farm Life Insurance Company agent. The Beastons failed to pay the premium on David's policy due on December 28, 1983. His policy lapsed as of December 28, 1983, and the thirty-one day grace period expired on January 28, 1984. Three days after the expiration of the grace period, David died in an automobile accident. State Farm refused to pay the benefits under his life insurance policy, claiming that coverage had expired before his death.

As the sole beneficiary of her husband's graded premium whole life policy, Terri brought suit against both State Farm and Heaton, asserting, among other claims, that they had violated Article 21.21. She also contended that the terms of the policy guaranteed payment of a dividend at death which should have been used to pay a part of the premium that was in arrears and thereby "cure" the policy's lapse.

The case was tried to a jury. At the close of the evidence, the trial court granted an instructed verdict in Terri's favor on the issue of coverage, finding that the policy was ambiguous and construing it to provide for dividends that "would have been sufficient to avoid the asserted lapse." (The basis of the trial court's ruling is set forth in its judgment.)

Issues were submitted to the jury on Terri Beaston's other claims. The jury found that the defendants had engaged in unfair or deceptive acts and that such conduct was a producing cause of damages to Terri Beaston. The jury failed to find, however, that State Farm or Heaton (1) had engaged in any false, misleading, or deceptive act or practice, (2) had engaged in any unconscionable action or course of action, (3) was negligent, or (4) was grossly negligent. There was a finding that State Farm had not waived any lapse under the policy. An issue as to whether State Farm or Heaton had knowingly engaged in any unconscionable

conduct was conditioned on an affirmative response to the question that asked whether either defendant had engaged "in any unconscionable action or course of action that was a producing cause of damages to Terri Beaston." Because the jury responded negatively, it did not reach the question asking whether the defendants had engaged in knowing conduct. No objection was made to the conditional submission.

In response to the damage issue, the jury awarded no policy benefits, but awarded $200,000 for mental anguish in the past. The jury was asked to and did award attorney's fees as a percentage of Terri Beaston's recovery, finding that forty percent was a reasonable fee, with increased percentages if the case were appealed to the court of appeals and to this Court.

The trial court rendered judgment in Terri Beaston's favor, awarding the face amount of the policy benefits ($250,000), and prejudgment interest ($147,171). A statutory delay penalty in the amount of twelve percent ($30,000) was added pursuant to Article 3.62 of the Texas Insurance Code, for a total of $427,171, and forty percent of that total ($170,868.40) was included in the judgment as attorney's fees. The trial court stated in its judgment that it "finds no cases that would allow the award of mental anguish damages absent a finding that the conduct of the Defendants was committed knowingly, and therefore ... mental anguish damages will not be awarded, and the jury's answer to Question 8(b) [concerning mental anguish damages] will be disregarded." The trial court additionally refused to treble the actual damages and refused to award attorney's fees based on a calculation that Terri Beaston contended was equal to forty percent of

the "recovery" (which would result in attorney's fees of $284,780.87 as calculated by Beaston) as opposed to only forty percent of the damages, including penalty and interest.

The court of appeals reversed the judgment of the trial court, holding that Terri Beaston was not required to obtain a jury finding that State Farm or its agent had knowingly violated Article 21.21 as a prerequisite for the recovery of mental anguish damages. 861 S.W.2d at 275. The court of appeals reinstated the jury's award of $200,000 in mental anguish damages and concluded that the trebling of those damages was mandatory under former Article 21.21, which governed this case.[1] The court affirmed the award of policy benefits, prejudgment interest, and a twelve-percent delay penalty,[2] but increased the amount of the judgment to include prejudgment interest and attorney's fees based on Terri Beaston's increased recovery. The court of appeals also modified the manner in which attorney's fees were calculated, rejecting the trial court's method in favor of the method proffered by Beaston. The court of appeals held that "the contingency fee percentage should be calculated on the total *recovery* and *not* on the total *damages*." 861 S.W.2d at 279 (emphasis in original).

State Farm brings forth several points of error, including challenges to the finding of coverage under the policy, the award of mental anguish damages, and the calculation of attorney's fees.

## II

Although it is undisputed that her husband's policy would have otherwise lapsed on December 28, 1983, Terri claims that the

---

1. Section 16 of the former Article 21.21 provided that "any plaintiff who prevails may obtain ... three times the amount of actual damages...." Act of May 21, 1973, 63rd Leg., R.S., ch. 143, § 2(c), 1973 Tex.Gen.Laws 322, 338, *amended by* Act of April 4, 1985, 69th Leg., R.S., ch. 22, § 3, 1985 Tex.Gen.Laws 395, 395. Article 21.21 presently provides, however, that a prevailing plaintiff can recover treble damages only if the "trier of fact finds that the defendant knowingly committed the acts" of which the plaintiff complains. Tex.Ins.Code art. 21.21, § 16(b)(1).

2. Prior to September 1, 1991, Article 3.62 of the Texas Insurance Code provided in relevant part:
In all cases where a loss occurs and the life insurance company ... liable therefor shall fail to pay the same within thirty days after demand therefor, such company shall be liable to pay the holder of such policy, in addition to the amount of the loss, twelve percent damages on the amount of such loss....
Act of April 27, 1931, 42nd Leg., R.S., ch. 91, § 1, 1931 Tex.Gen.Laws 135, 135, *repealed by* Act of June 6, 1991, 72nd Leg., R.S., ch. 242, § 12.01(2), 1991 Tex.Gen.Laws 939, 1133.

policy remained in force because of its dividend-at-death provision. The policy provides, in relevant part:

> **Nonpayment of Premium.** If a premium has not been paid by the end of its grace period, the Accumulations to Avoid Lapse and, if chosen, the Automatic Premium Loan provisions will apply. If neither of these provisions apply, this policy will lapse as of the due date of any amount of unpaid premium. With such lapse, all coverage ceases....

> **Accumulations to Avoid Lapse.** If a premium has not been paid by the end of its grace period, any available dividend accumulations will be used to pay all or part of that premium....

> **Premium Adjustment When Insured Dies.** If the Insured dies during a grace period, any part of a premium due will be paid from the proceeds....

> **Annual Dividends.** State Farm Life may apportion and pay dividends each year. Any such dividends will be paid at the end of the policy year if all premiums due have been paid....

> **Dividend Options.** The Owner may choose one of the options listed below....

> 3. Dividend Accumulation. Left to accumulate.... Accumulations plus interest to the Insured's death will be part of the proceeds.

> **Dividend at Death.** A dividend for the period from the start of the policy year to the Insured's death will be part of the proceeds.

It is undisputed that David had not accumulated any dividend following the first year of the policy or that he died before its second anniversary. State Farm argues that the terms of David's policy make clear that the payment of any dividend is contingent on the insured's payment of all premiums due. Since David had not paid the last premium on his policy prior to the expiration of its grace period, he was entitled to no dividend that could be used to cure his unpaid premium. The trial court held, however, that the terms of the policy were ambiguous because they could reasonably be taken to mean that State Farm would pay David a dividend at his death, regardless of his arrearages. The

court of appeals affirmed. 861 S.W.2d at 276–77.

■■■ We disagree. As we explained in *Forbau v. Aetna Life Insurance Co.,* 876 S.W.2d 132 (Tex.1994), the interpretation of insurance contracts is governed by the same rules of construction applicable to other contracts. *Id.* at 133 (citations omitted). When construing a contract, courts must strive to give effect to the written expression of the parties' intent. *Id.* (citations omitted). To do so, they must read all parts of a contract together. *Id.* (citations omitted). Indeed, courts must be particularly wary of isolating from its surroundings or considering apart from other provisions a single phrase, sentence, or section of a contract. *See id.* at 133–34 (citations omitted). Only if an insurance policy remains ambiguous despite these canons of interpretation should courts construe its language against the insurer in a manner that favors coverage. *See, e.g., National Union Fire Ins. Co. v. Hudson Energy Co.,* 811 S.W.2d 552, 555 (Tex.1991); *Blaylock v. American Guar. Bank Liab. Ins. Co.,* 632 S.W.2d 719, 721 (Tex.1982); *Ramsay v. Maryland Am. Gen. Ins. Co.,* 533 S.W.2d 344, 349 (Tex.1976).

Terri Beaston interprets David's policy to mean that State Farm would pay a pro-rated dividend at his death, regardless of how many premium payments had been missed or whether the policy was inside or outside its grace period following the nonpayment of a premium. However, as we recognized in *Forbau:*

> [N]ot every difference in the interpretation of a contract or an insurance policy amounts to an ambiguity. Both the insured and the insurer are likely to take conflicting views of coverage, but neither conflicting expectations nor disputation is sufficient to *create* an ambiguity.

*Forbau,* 876 S.W.2d at 134 (citations omitted) (emphasis in original).

Despite Terri's contrary interpretation, the policy, viewed in its entirety, unambiguously provides that David would not receive any dividend that could be used to cure his policy's lapse under the circumstances presented here. The policy states that if, as in this

case, a premium has not been paid by the end of its grace period, the accumulations-to-avoid-lapse provision will apply. Under that provision, State Farm agrees to use "any available dividend accumulations" to pay all or part of the unpaid premium. Dividend accumulations are those dividends, if any, paid to the insured on the anniversary of the policy and "left to accumulate," as allowed by one of the policy's "dividend options."[3] The annual-dividends provision confirms this. Terri acknowledges that her husband's policy had not accumulated any dividends on its first anniversary[4] and that the policy lapsed before its second anniversary. Because the policy lapsed before its second anniversary, any dividends that might have been paid on that date had not yet "accumulated." As a result, there simply were no dividend accumulations available to cure the lapse.

The policy's dividend-at-death provision is irrelevant under these circumstances. Contrary to Terri Beaston's assertion that the policy's dividend-at-death clause states unconditionally that State Farm *will* pay a pro-rated dividend to David upon his demise, the provision states only that "[a] dividend for the period from the start of the policy year to the Insured's death will be *part of the proceeds*." (Emphasis added). But the payment of proceeds under the policy is contingent upon the insured's timely payment of premiums. Under the policy's nonpayment-of-premium provision, if a premium has not been paid by the end of the grace period, the "policy will lapse *as of the due date* of any amount of unpaid premium," unless the accumulations-to-avoid-lapse provision or the automatic premium loan provision applies.

(Emphasis added). Neither of those provisions applies here.[5] When the policy lapses due to nonpayment, "all coverage ceases," and consequently there are no proceeds with which the dividend could be included. Construed together, the dividend-at-death and nonpayment-of-premium provisions leave no doubt that the insured is not entitled to a dividend at death unless the policy is in force when the insured dies. Under this policy, therefore, a dividend at death is not available to cure an unpaid premium.[6] The grace period for the payment of David's December 28, 1983 premium expired on January 28, 1984, three days before David's death. Since coverage ceased before David's death, he was not entitled to a pro-rated dividend upon his death that could revive his coverage under the lapsed policy. Thus, we reverse the judgment of the court of appeals in awarding Terri Beaston the benefits of her husband's life insurance policy.

## III

■ State Farm also complains that the court of appeals erred in awarding Terri Beaston damages for mental anguish under Article 21.21. State Farm argues in the alternative that (1) there is no evidence to support the jury's finding that it violated Article 21.21; (2) there is no evidence to support the jury's finding regarding mental anguish damages; or (3) damages for emotional distress are not recoverable because Terri failed to secure a jury finding that State Farm acted knowingly.

Article 21.21 provides a remedy for those injured by (1) any "unfair methods of compe-

3. When State Farm pays a dividend at the end of a policy year, the policy provides the insured with four options. He or she can (1) use the dividend toward the payment of a premium; (2) use the dividend to purchase a paid-up life insurance addition; (3) leave the dividend to accumulate (in which case, the dividend accumulations earn interest at the minimum rate of 4½% each year); or (4) be paid the dividend in cash.

4. The terms of the policy do not guarantee payment of dividends, as evidenced by the annual-dividends provision which provided that State Farm *"may* apportion and pay dividends each year." (Emphasis added.) Because no dividend was paid during the first year of David's policy, there was no dividend left to accumulate.

5. As discussed above, the accumulations-to-avoid-lapse provision does not apply because there were no dividend accumulations. The automatic premium loan provision does not apply because David's policy had not yet built up any cash value, and thus the policy did not have adequate "loan value," as required by that provision.

6. If the insured dies while the policy is *within* the thirty-one day grace period following the nonpayment of a premium, any premium due is paid from the proceeds.

tition and unfair and deceptive acts or practices in the business of insurance" specifically defined in Section 4 of Article 21.21, (2) practices declared in the rules or regulations of the Board of Insurance to be unfair methods of competition and unfair and deceptive acts or practices in the business of insurance, or (3) violations of Section 17.46 of the Texas Business and Commerce Code, otherwise known as the Deceptive Trade Practices—Consumer Protection Act ("DTPA").[7] *See* TEX.INS.CODE art. 21.21, § 16(a). The jury found that one or both of the defendants engaged in an unfair or deceptive act or practice.

State Farm contends that there is no evidence to support this finding. Because the only damages found by the jury were for mental anguish, we turn first to State Farm's argument that Terri cannot recover mental anguish damages in the absence of a finding that it acted knowingly. Whether such a finding is a prerequisite for recovering mental anguish damages under Article 21.21 is a question of first impression for this Court.

Like the DTPA, Article 21.21 provides that parties may recover their actual damages against a defendant who has violated the statute's provisions. TEX.INS.CODE art. 21.21, § 16(b)(1). Neither the DTPA nor Article 21.21 defines "actual damages." In construing this term, our courts have concluded that the "actual damages" available under Article 21.21 or the DTPA are those damages recoverable at common law. *Brown v. American Transfer & Storage Co.*, 601 S.W.2d 931, 939 (Tex.), *cert. denied*, 449 U.S. 1015, 101 S.Ct. 575, 66 L.Ed.2d 474 (1980); *see also Frank B. Hall & Co. v. Beach, Inc.*, 733 S.W.2d 251, 265 (Tex.App.—Corpus Christi 1987, writ ref'd n.r.e.); *St. Paul Ins. Co. v. McPeak*, 641 S.W.2d 284, 287 (Tex.App.—Houston [14th Dist.] 1982, writ ref'd n.r.e.).

Courts traditionally have been reluctant to allow recovery of damages for emotional distress without some additional threshold showing, for example, that the mental anguish was accompanied by a physical injury "resulting from a physical impact or was produced by a particularly upsetting or disturbing event." *The Parkway Co. v. Wood-*

*ruff,* 901 S.W.2d 434, 442 (Tex.1995). *See generally,* LAYCOCK, MODERN AMERICAN REMEDIES 189–90 (2d ed. 1994) (discussing restrictions on recovery for emotional distress).

We have held in a DTPA case that mental anguish damages are not recoverable where there was no willful conduct and no resulting physical injury. *Brown,* 601 S.W.2d at 939. We similarly held in *Duncan v. Luke Johnson Ford, Inc.,* 603 S.W.2d 777, 779 (Tex. 1980), that damages cannot be recovered for mental anguish alone and that there must be proof of a willful tort, gross negligence, or willful disregard. See also *Luna v. North Star Dodge Sales, Inc.,* 667 S.W.2d 115, 117–18 (Tex.1984), where we held that a finding that the unconscionable actions were committed "knowingly" would support mental anguish damages, but we remanded for a determination of the factual sufficiency of the evidence to support the mental anguish award, and *Boyles v. Kerr,* 855 S.W.2d 593, 598 (Tex.1993), where we observed in dicta that mental anguish damages may not be recovered under the DTPA absent proof of a willful or grossly negligent violation.

We see no reason that a culpable mental state should not also be required to recover mental anguish damages under Article 21.21. As the court of appeals recognized, the DTPA and Article 21.21 are interrelated. 861 S.W.2d at 274. The Legislature enacted both remedies in 1973 as "part of a reform package of consumer legislation." *State Farm Fire & Cas. Co. v. Gros,* 818 S.W.2d 908, 916 (Tex.App.—Austin 1991, no writ); *see also Frank B. Hall,* 733 S.W.2d at 265 (noting that the purposes of the statutes are similar). The DTPA was designed to protect consumers against "false, misleading, and deceptive business practices, unconscionable actions, and breaches of warranty...." TEX. BUS. & COM.CODE § 17.44. Similarly, Article 21.21 was enacted to regulate practices in the insurance industry by prohibiting "unfair methods of competition or unfair or deceptive acts or practices." TEX.INS.CODE art. 21.21, § 1(a). Section 17.50(a)(4) of the DTPA incorporates Section 16 of Article 21.21, and Section 16 of Article 21.21 prohibits an insur-

7. TEX.BUS. & COM.CODE §§ 17.41–17.63.

er from engaging in any practice proscribed by Section 17.46 of the DTPA. TEX.BUS. & COM.CODE § 17.50(a)(4); TEX.INS.CODE art. 21.21, § 16(a); *see also Transport Ins. Co. v. Faircloth*, 898 S.W.2d 269, 273 (Tex.1995).

In DTPA cases that do not involve personal injury, we have required a threshold finding of a culpable mental state as one of the prerequisites for mental anguish damages. *See, e.g., Luna*, 667 S.W.2d at 117–18; *Duncan*, 603 S.W.2d at 779; *Brown*, 601 S.W.2d at 939. It is logical to require a similar culpable mental state under Article 21.21.

■ Having decided that some culpability is required, we must determine the appropriate standard. We conclude that a finding of knowing conduct is a prerequisite to the recovery of mental anguish damages under Article 21.21. "Knowingly" is the only culpable mental state to which the statute currently refers. *See* TEX.INS.CODE art. 21.21, § 16(b)(1).[8] We therefore hold that mental anguish damages are not recoverable under Article 21.21 as an element of actual damages without an express finding of knowing conduct. The other prerequisites for recovery of mental anguish damages under the common law must also be present. As there was no finding here of knowing conduct, the judgment of the court of appeals is reversed to the extent that it awards any damages for mental anguish. Accordingly, we do not address State Farm's further argument that the record contains no evidence that State Farm or Heaton committed a violation of Article 21.21 of the Insurance Code or the argument that the record contains no evidence of Terri's mental anguish. Nor are we called upon to consider whether Terri has satisfied any other requirements for a recovery of mental anguish damages in this case.

**IV**

■ Terri Beaston counters that even if a finding of knowing conduct is required to recover mental anguish damages under Article 21.21 in this case, she nevertheless is entitled to prevail because State Farm failed to preserve its complaint regarding this issue. We hold that State Farm did not waive error on this point.

Tracking the language of Article 21.21, question one to the jury asked whether "State Farm or Ted Heaton engage[d] in any unfair or deceptive act or practice that was a producing cause of damages to Terri Beaston." The jury responded affirmatively. The jury further found in response to question eight that $200,000 would fairly and reasonably compensate Terri for her mental anguish. The jury charge did not condition question eight on an affirmative response to any issue concerning knowing conduct. State Farm objected to question eight on the grounds that there was no evidence to support a finding of mental anguish damages, but it never objected that the charge failed to condition question eight on a finding that State Farm had acted knowingly.

Terri contends that because State Farm did not point out to the trial court that question eight regarding mental anguish damages should have been conditioned on a finding of knowing conduct, State Farm cannot now complain that the court of appeals erred in awarding mental anguish damages without such a finding. She argues that if a party makes no objection to a defective submission of a controlling issue constituting an element of a ground of recovery and a judgment is rendered thereon, the party's failure to object waives the defective submission of that issue. *See, e.g., Allen v. American Nat'l Ins. Co.*, 380 S.W.2d 604, 609 (Tex.1964).[9]

---

**8.** The Insurance Code defines "knowingly" as "actual awareness of the falsity, unfairness, or deception of the act or practice made the basis for a claim for damages under Section 16 of this Article. 'Actual awareness' may be inferred where objective manifestations indicate that a person acted with actual awareness." TEX.INS. CODE § 21.21(2)(c).

**9.** In *Allen*, we wrote:

It seems well settled in this State that where no objection is made to a defective submission of a controlling issue constituting a component element of a ground of recovery or a defense and a judgment is rendered thereon, such judgment will not be reversed because the failure to object is considered a waiver of the defective submission of such issue.

*Allen*, 380 S.W.2d at 609 (citations omitted).

Had the trial court rendered judgment in favor of Terri for mental anguish damages, her argument would be correct. Where, as here, a jury awards damages based on a charge that omits an element necessary to sustain a ground of recovery, the trial court can either file a written finding regarding the missing element or render judgment without one. *See* Tex.R.Civ.P. 279.[10] If the trial court does not file a written finding, the omitted element is deemed found in support of the judgment as long as no objection was made and the evidence supports such a finding. *See id.; Ramos v. Frito–Lay, Inc.,* 784 S.W.2d 667, 668 (Tex.1990).

But in this case, the trial court did not file a written finding as to whether State Farm or Heaton acted knowingly. To the contrary, the judgment that the trial court rendered expressly excluded mental anguish damages. By denying Terri any damages for emotional distress, the trial court cannot be deemed to have found that either defendant acted knowingly. *See* Tex.R.Civ.P. 279. Accordingly, State Farm's failure to object to the form of question eight did not waive error regarding this issue.[11]

## V

■ Having rendered judgment that Terri Beaston take nothing with respect to her claim under Article 21.21, we also reverse her award of attorney's fees. Section 16 of the applicable version of Article 21.21 provides that "any plaintiff who prevails may obtain ... actual damages plus ... attorneys' fees reasonable in relation to the amount of work expended...." [12] Act of May 21, 1973, 63rd Leg., R.S., ch. 143, § 2(c), 1973 Tex.Gen.Laws 322, 338, *amended by* Act of April 4, 1985, 69th Leg., R.S., ch. 22, § 3, 1985 Tex.Gen.Laws 395, 395.

To obtain an award of attorney's fees under the DTPA or Section 38.001 of the Civil Practice and Remedies Code,[13] a party must (1) prevail on a cause of a cause of action for which attorney's fees are recoverable, and (2) recover damages. *See McKinley v. Drozd,* 685 S.W.2d 7, 9 (Tex.1985) (construing the DTPA); *Rodgers v. RAB Investments, Ltd.,* 816 S.W.2d 543, 551 (Tex.App.—Dallas 1991, no writ) (construing the Civil Practice and Remedies Code). Since the fee-shifting provision of Article 21.21 echoes the words of the DTPA and Section 38.001 which provide for awarding attorney's fees, we hold that a party must satisfy the same two requirements to recover attorney's fees under Article 21.21. While we assume without deciding that Terri prevailed under Article 21.21, she cannot recover attorney's fees because she has recovered no damages. We therefore reverse the judgment of the court of appeals concerning the award of attorney's fees under Article 21.21.

\* \* \*

For the foregoing reasons, we reverse the judgment of the court of appeals and render

---

**10.** Rule 279 governs omissions from the jury charge and provides in relevant part:

> When a ground of recovery or defense consists of more than one element, if one or more of such elements necessary to sustain such ground of recovery or defense, and necessarily referable thereto, are submitted to and found by the jury, and one or more of such elements are omitted from the charge, without request or objection.... the trial court ... may ... make and file written findings on such omitted element or elements in support of the judgment. If *no* such written findings are made, such omitted element or elements shall be deemed found by the court in such manner as to *support* the judgment.
>
> Tex.R.Civ.P. 279 (emphasis added).

**11.** We do not necessarily disagree with the principles of law articulated by the dissent, but they are inapplicable under these circumstances since the trial court did not render judgment for Terri with respect to damages for emotional distress.

**12.** The fee-shifting language of the current version of Article 21.21 is essentially the same. It provides that "any plaintiff who prevails may obtain ... the amount of actual damages plus court costs and reasonable and necessary attorneys' fees." Tex.Ins.Code art. 21.21, § 16(b)(1).

**13.** Section 38.001 provides:

> A person may recover reasonable attorney's fees from an individual or corporation, in addition to the amount of a valid claim and costs, if the claim is for: (1) rendered services; (2) performed labor; (3) furnished material; (4) freight or express overcharges; (5) lost or damaged freight or express; (6) killed or injured stock; (7) a sworn account; or (8) an oral or written contract.
>
> Tex.Civ.Prac. & Rem.Code § 38.001.

judgment that Terri Beaston take nothing.[14]

PHILLIPS, Chief Justice, delivered a concurring and dissenting opinion, joined by SPECTOR, Justice.

I agree with the Court in most respects. But for many of the same reasons as the dissent, I believe that the insurance policy was ambiguous and, consequently, that the court of appeals was correct in affirming the trial court's judgment that State Farm owed Terri the proceeds of the policy as a matter of law.

Therefore, I note my dissent to Part II of the Court's opinion concerning the policy, while joining in Parts III, IV, and V of the Court's opinion concerning mental anguish damages, preservation of error, and attorney's fees. I would render judgment that Terri recover only the policy benefits, statutory attorney's fees, and costs.

GAMMAGE, Justice, joined by HIGHTOWER, Justice, dissenting.

The majority overlooks procedural waiver by defendants in order to reach statutory construction issues, rewrites DTPA and Insurance Code article 21.21 law in ways never conceived before, then misapplies its own new rule. The jury found she had suffered damages from unfair insurance practices. The trial court and court of appeals struggled with the question of how much she should recover. The policy at issue is ambiguous, as we have historically used the term "ambiguity" for insurance policies. The trial court correctly rendered judgment on an instructed verdict for Beaston for the policy amount based on the undisputed facts. And, as to unfair insurance practice recovery, defendants failed to object to the jury charge, which neither segregated nor conditioned the mental anguish damages issue on an additional finding of "knowing" conduct. Defendants were required to object to an improperly conditioned damages issue to preserve error, and their failure waived their com-

plaints about mental anguish as an element of damages absent "knowing" conduct. Even if one reaches the "knowing" issue, however, the version of article 21.21 applicable when the incident occurred did not require "knowing" conduct for mental anguish damages. Even under the majority's test, however, mental anguish damages are recoverable if they would be part of common law actual damages, and Beaston's injury of delay and anguish over policy coverage for the death of her husband is most analogous to common law actions allowing mental anguish recovery. The majority misapplies its own test. Because I believe the majority is wrong on each issue, I dissent.

## I.

First consider whether Mrs. Beaston is entitled to recover any proceeds from her husband's life insurance policy. Although it is undisputed, based upon the issue date shown on its face, that her husband's policy had expired for nonpayment of premium when he died, Mrs. Beaston argues a construction of the policy that keeps it in force because of its dividend-at-death provision. The policy provides, in relevant part:

**Accumulations to Avoid Lapse.** If a premium has not been paid by the end of its grace period, *any* available dividend will be used to pay all or part of that premium. . . .

**Annual Dividends.** State Farm Life may apportion and pay dividends each year. Any such dividends will be paid at the end of the policy year if all premiums due have been paid. . . .

**Dividend at Death.** A dividend for the period *from the start of the policy year* to the insured's death will be part of the proceeds.

(Emphasis added.)

The parties do not dispute that Mr. Beaston had not accumulated any dividend following the first year of the policy or that he died

---

14. Consequently, we do not reach the question of whether the attorney's fees were properly calculated, *but* note that in *Great American Insurance Company v. North Austin Municipal Utility District No. 1,* —— S.W.2d —— (Tex.1995), we expressly disapproved of the method of calculation used by the court of appeals in this case. Nor do we reach Terri's point of error regarding the court of appeals' refusal to treble the award of policy benefits or State Farm's point of error regarding the court of appeals' trebling of prejudgment interest.

before its second anniversary. The court accepts State Farm's argument that the terms of Mr. Beaston's policy make clear that the payment of any dividend is contingent on the insured's payment of all premiums due. Since Mr. Beaston had not paid the last premium on his policy prior to the expiration of its grace period, State Farm contends, the terms of the policy are unambiguous that he would not receive any dividend that could be used to cure his unpaid premium. The court thus accepts a reading of the contract favorable to the insurance company, *which drafted it.* This is **not** proper.

The trial court held that these policy provisions could reasonably be taken to mean that State Farm would pay Mr. Beaston a dividend at his death, regardless of his arrearages, and the court of appeals agreed with that analysis. 861 S.W.2d at 277. The dividend-at-death clause states unconditionally that State Farm *will* pay a pro-rated dividend to Mr. Beaston upon his demise. The accumulations-to-avoid-lapse provision states with equal certainty that State Farm *will* use any such dividend to pay all or part of the insured's unpaid premiums. State Farm was aware of the difference between discretionary or contingent clauses and mandatory provisions. The annual-dividend clause, for example, says State Farm "may" pay dividends each year. State Farm's choice to *not* make the payment of a dividend at death expressly contingent on the insured's timely payment of premiums created an ambiguity that leaves the policy susceptible to two reasonable interpretations. That makes the language "ambiguous" and the court should construe it against the insurer in a manner that favors coverage. *See Balderama v. Western Casualty Life Ins. Co.,* 825 S.W.2d 432, 434 (Tex.1991); *National Union Fire Ins. Co. v. Hudson Energy Co.,* 811 S.W.2d 552, 555 (Tex.1991); *Barnett v. Aetna Life Ins. Co.,* 723 S.W.2d 663, 666 (Tex.1987); *Blaylock v. American Guarantee Bank Liab. Ins. Co.,* 632 S.W.2d 719, 722 (Tex.1982); *Ramsay v. Maryland Am. Gen. Ins. Co.,* 533 S.W.2d 344, 349 (Tex.1976). Construed against State Farm, Mr. Beaston's policy provides that State Farm would pay him a pro-rata dividend at death and would apply that dividend pro-rata to his unpaid premium. Under this construction, as State Farm concedes, the amount of such a pro-rated dividend would have been sufficient to prevent the policy from lapsing.

The majority reaches its contrary conclusion through its new-found device to avoid ambiguity, applying "rules of construction" as in *Forbau v. Aetna Life Ins. Co.,* 876 S.W.2d 132 (Tex.1994). Unlike the insurance policy in *Forbau,* however, the policy at issue here does not contain any provision that, with reference to an external event, resolves its ambiguity. It appears that the majority now interprets *Forbau* as overruling all our insurance ambiguity precedents, although in *Forbau* the majority claimed otherwise. The gymnastics utilized to conclude ambiguity is not ambiguous, at bottom amount to reading a provision into the contract that *is not there* to provide that all dividends and accumulations are *not payable* after a lapse, even upon death, at which occurrence the policy states expressly they are payable. Therefore, no ambiguity!

## II.

Assuming our traditional rules dealing with ambiguities in insurance contracts were applied and the policy were construed in Beaston's favor, State Farm and Heaton waived their complaint that "mental anguish" damages required a "knowingly" finding. The jury's affirmative finding to question one, a general article 21.21 violation, was one of five conditions which if the jury answered "Yes" to any one, required the jury to answer the damages question. State Farm made no objection that the damages issue was improperly conditioned because the general article 21.21 liability question, and possibly some of the other four questions requiring the jury to answer on damages, would also require a "knowing" finding. Neither did State Farm object that the damages question used the wrong measure of damages because the mental anguish element was improper absent an express "knowing" finding. And State Farm did not object to the damages question because it contained an element of damages—mental anguish—not supported by some of the liability theories pre-

sented (no "knowing" violation). *No objection* appears in the record which would give the trial court or opposing counsel notice of the complaint about mental anguish as an element of damages.

Rule 272 expressly provides that all parties must have adequate opportunity to review and object to any defects in the charge, and "[a]ll objections not so presented shall be considered as waived." Tex.R.Civ.P. 272. Rule 274 contains additional waiver provisions. This court has long held that Rule 272, with or independent of Rule 274, is a broad waiver provision defeating complaints about what the jury found or the form or substance of the jury questions. *Cogburn v. Harbour*, 657 S.W.2d 432, 432 (Tex.1983); *Edwards v. Strong*, 213 S.W.2d 979, 981 (Tex. 1948); *Wilson v. King*, 311 S.W.2d 957, 958–59 (Tex.Civ.App.—Austin 1958, writ ref'd). In particular, we have expressly approved the statement of the reason for the rule given in *Wilson:*

> The purpose of the Rules requiring a party to except to the charge is to give the Trial Court an opportunity to correct any errors, to the end that the case may be fairly submitted, and all defects in the manner of submission of special issues were waived by failing to except thereto. [Citations omitted.]

*Id.* at 959. Here neither the trial court nor Beaston's counsel had the opportunity to change the conditional submission structure of the court's charge, because State Farm made no objection before the verdict. This is precisely what Rules 272 and 274 are intended to prevent.

The failure to object to the conditional submission of the damages issue waives error as to form and substance of the submission. *Wilgus v. Bond,* 730 S.W.2d 670, 672 (Tex. 1987); *Matthews v. Candlewood Builders, Inc.,* 685 S.W.2d 649, 650 (Tex.1985); *Strauss v. LaMark,* 366 S.W.2d 555, 557 (Tex.1963); *AAA Air Conditioning & Mfg. Corp. of Tex. v. Barr,* 186 S.W.2d 825, 826–27 (Tex.Civ. App.—Dallas 1945, writ ref'd); *Republic Bankers Life Ins. Co. v. Coffey,* 490 S.W.2d 231, 233 (Tex.Civ.App.—Amarillo 1973, writ ref'd n.r.e.); *Bell v. Aetna Cas. & Sur. Co.,* 394 S.W.2d 830, 833–34 (Tex.Civ.App.—

Houston [1st Dist.] 1965, writ ref'd n.r.e.). The failure to object that the damages issue includes improper elements or is based on the wrong measure of damages waives error as to the form and substance of the damages issue. *See Tom Benson Chevrolet, Inc. v. Alvarado,* 636 S.W.2d 815, 822–23 (Tex. App.—San Antonio 1982, writ ref'd n.r.e.); *Traylor v. Gray,* 547 S.W.2d 644, 658 (Tex. Civ.App.—Corpus Christi 1977, writ ref'd n.r.e.); *McCreless Properties, Ltd. v. F.W. Woolworth Co.,* 533 S.W.2d 863, 867 (Tex.Civ. App.—San Antonio 1976, writ ref'd n.r.e.).

The majority errs in even reaching the "knowingly" issue because State Farm failed to object and thereby waived any complaint that the mental anguish element of damages had to be conditioned upon or required a finding of knowing conduct.

### III.

The majority asserts that "[i]n DTPA cases that do not involve personal injury, we have required a threshold finding of a culpable mental state as one of the prerequisites for mental anguish damages." 907 S.W.2d at 436. This misses the point of those cases, that mental anguish damages are recoverable only if the DTPA violation proved is analogous to a common law action allowing recovery of such mental anguish damages. This court has held that mental anguish is a common law element of damages in a large variety of circumstances not limited to physical injury or culpable mental state. Here the Insurance Code violation found by the jury is closely analogous to instances where the common law allows mental anguish recovery, because a central purpose of the interest protected by the Code is to avoid mental harm to the beneficiary.

Under the DTPA, the term "actual damages" means those damages that are recoverable under the common law. *Brown v. American Transfer & Storage Co.,* 601 S.W.2d 931, 939 (Tex.1980). Article 21.21 likewise provides for the recovery of "actual damages." The threshold question is whether mental anguish damages are appropriate under the common law for the actionable conduct found by the jury. Only if mental anguish is not a common law element of

damages must we look to exceptions allowing mental anguish damages, such as proof of willful or grossly negligent conduct. *See, e.g., Luna v. North Star Dodge Sales, Inc.,* 667 S.W.2d 115 (Tex.1984); *Duncan v. Luke Johnson Ford, Inc.,* 603 S.W.2d 777 (Tex. 1980).

The jury found State Farm engaged in unfair and deceptive acts prohibited by article 21.21. The jury further found mental anguish damages from the unfair and deceptive acts. The "unfair and deceptive acts" question was a broad submission. If there is any evidence that some specific conduct for which mental anguish damages are recoverable supported that broad finding,[1] the court of appeals' rendition of judgment on the jury verdict must be affirmed. *Prudential Ins. Co. v. Jefferson Assocs.,* 896 S.W.2d 156, 160 (Tex.1995); *Brown v. American Transfer & Storage Co.,* 601 S.W.2d 931, 937–38 (Tex. 1980).

The evidence considered favorably to Terri Beaston, for whom the jury answered the broad question affirmatively, supports the conclusion that Heaton, as State Farm's agent acting with the capacity to deceive the average consumer, failed to suggest changing from whole life to term insurance. The circumstances known to Heaton would objectively make one realize that his failure to make known the term life option would cause emotional distress to Terri Beaston while the couple struggled to pay the higher whole life premiums. Moreover, in the event of David Beaston's death, the purported lapse in coverage because of nonpayment of the higher premium would cause emotional distress associated with his death. Heaton *was informed* Terri would suffer heightened emotional distress associated with his death because of the financial strain of losing his income, something she abnormally feared.

There was evidence that Terri had an exaggerated fear of being unable to pay creditors in the event of David's death. The young couple had a life insurance policy before but let it lapse because of financial problems, which caused Terri great distress. She insisted that David obtain new life insurance coverage.

Ted Heaton was the agent who promised to take care of the Beastons' insurance needs. The Beastons did not have a clear understanding of the difference between term and whole life; they did not realize that term was much less expensive for the same coverage. Heaton could have suggested they exchange their whole life policies for the more affordable term, but he admitted he never even suggested the possibility to them. Heaton knew the Beastons' financial problems began in June 1983. He was in frequent contact with them about their late premium payments. He knew that Terri Beaston was "adamant" about keeping the policies in force. Terri was the one who made payments on both policies whenever she could, and Heaton knew she was doing everything she could to pay the premiums.

There was evidence that Heaton's failure to suggest the term option was an unfair practice under article 21.21. State Farm's own training manual informed Heaton that term was suitable for young couples who lacked the means to purchase whole life. The manual states that term insurance provides good protection until the policyholder can afford whole life. The testimony was that from mid–1983 up to the day David died, the Beastons fit the description of people for whom term insurance was well suited, and Heaton knew it. Heaton admitted that he would normally advise someone of this choice between term and whole life, but did not do so in this case. Terri Beaston testified that given a choice, she would have switched. If the Beastons had switched to any of the three term conversion policies State Farm offered, the premiums they actually paid for the whole life would have been more than sufficient to pay for term coverage through the date of David's death.

The failure to offer the term option, given the surrounding circumstances, is most analogous to torts which recognize emotional harm as an element of common law damages, because emotional harm is the natural result of such wrongful conduct associated with the death of a spouse or family member. This court early recognized this principle in

---

1. Consistent, of course, with the other express jury findings.

*Stuart v. Western Union Telegram Co.*, 18 S.W. 351, 353 (Tex.1885), in which the court refused to limit the recovery to the fifty cents paid for the telegram sent but not delivered to inform that a family member was dying. The court instead allowed the $2,500 *emotional injury damages* found by the jury, stating that "[t]he wrongdoer knows he is doing this damage when he afflicts the mind by withholding the message of mortal illness ... injury to the feelings is actual damage ... the natural result of the wrongful act."[2]

The court also has reviewed judgments for emotional injury for mishandling of a corpse. *See, e.g., Clark v. Smith,* 494 S.W.2d 192 (Tex.Civ.App.—Dallas 1973, writ ref'd n.r.e.); *Classen v. Benfer,* 144 S.W.2d 633, 635 (Tex. Civ.App.—San Antonio 1940, writ dism'd jdgmt correct). The court expressly cited these two holdings with approval, and has held expressly that emotional distress damages are allowed for wrongful death, because it is the "natural result" of this class of torts where the "nature of the torts assures that the claimants will suffer mental injury." *See Moore v. Lillebo,* 722 S.W.2d 683, 685 (Tex. 1986).

State Farm does argue that all these cases are distinguishable and not properly analogous because they all involve "knowing" conduct, which the jury here expressly was not asked and did not find. The argument is incorrect. In *Stuart* the wrongful failure to deliver the telegram was committed negligently, not knowingly. What was "knowing" was that the emotional harm would follow if the act was not done, whether the omission itself was negligent or knowing. Likewise, in *Classen* the reinterment of the bodies into the new cemetery was performed negligently, resulting in the loss of a body. What was "knowing" was that emotional damages

would surely result if one negligently lost the remains of a family member. In *Moore v. Lillebo,* the wrongful death was the result of negligence. What was "knowing" was that emotional harm would result from such negligence. We said that emotional reaction is the natural by-product of wrongful death, that it "destroys any pre-existing family relationship," and that for wrongful death emotional harm is usually the "principal element" of damages for surviving relatives. *Moore v. Lillebo,* 722 S.W.2d at 685.[3]

The evidence here is equally strong that Terri Beaston had communicated her "adamant" concern, in Heaton's own words, to keep the insurance policies in effect because of her expressed great fear of financial hardship in the event of David's death. State Farm's mere claim that the policy had lapsed caused additional psychic trauma to Beaston following David's death. That this would occur during Beaston's grief over her husband's death was clearly "known" to Heaton and State Farm, and it was the natural result of their negligent failure to offer the term option to the Beastons. I would hold that under the evidence and jury findings of this case, emotional harm is an element of common law damages and recoverable regardless of whether the wrongful conduct was knowing.

For the foregoing reasons, I dissent.

---

**2.** In those jurisdictions recognizing a "wrongful conception" or "wrongful pregnancy" cause of action, emotional distress is a principal element of damages precisely because it is the natural result of the wrongful conduct. *See, e.g., Boone v. Mullendore,* 416 So.2d 718 (Ala.1982); *Custodio v. Bauer,* 251 Cal.App.2d 303, 59 Cal Rptr. 463 (1st Dist.1967); *Bushman v. Burns Clinic Med. Ctr.,* 83 Mich.App. 453, 268 N.W.2d 683 (1978); *Weintraub v. Brown,* 98 App.Div.2d 339, 470 N.Y.S.2d 634 (2d Dept.1983); *Jean–Charles*

*v. Planned Parenthood Asso.,* 99 App.Div.2d 542, 471 N.Y.S.2d 622 (2d Dept.1984); *Smith v. Gore,* 728 S.W.2d 738 (Tenn.1987); *C.S. v. Nielson,* 767 P.2d 504 (Utah 1988); *James G. v. Caserta,* 175 W.Va. 406, 332 S.E.2d 872 (1985).

**3.** These cases cannot properly be called "culpable mental state" cases, but the majority does not tell us how they fall into its newly-defined limitations. Are these precedents also overruled?