IN THE SUPREME COURT OF TEXAS






IN THE SUPREME COURT OF TEXAS
 
════════════
No. 03-0647
════════════
 
 Evanston Insurance 
Company,
Petitioner,
 
v.
 
ATOFINA Petrochemicals, 
Inc.,
Respondent
 
════════════════════════════════════════════════════
On Petition for Review from the
Court of Appeals for the Ninth District of 
Texas
════════════════════════════════════════════════════
 
 
Argued April 13, 
2005
 
 
 
Justice Green delivered the opinion of 
the Court.
 
 

In this case 
we consider the scope of insurance coverage that is provided to a third-party 
additional insured under an excess insurance policy. Specifically, we are asked 
to decide whether the additional insured provisions of the policy in question 
are broad enough to indemnify the third-party’s own acts of negligence, and 
whether the scope of this coverage is limited in any way by the separate 
indemnity agreement between the third-party and the policy’s named insured. We 
decide the first question by concluding that the policy language excludes 
coverage for the additional insured’s sole negligence and, for that reason, it 
is unnecessary to reach the second question. We remand for a determination of 
the underlying liability issues.
ATOFINA 
Petrochemicals, Inc.[1] hired Triple S 
Industrial Corporation as an independent contractor to perform maintenance and 
construction work at ATOFINA’s Port Arthur oil refinery. A Triple S 
employee was killed at the ATOFINA facility while performing work pursuant to 
the independent contractor agreement between ATOFINA and Triple S. The 
employee’s relatives sued ATOFINA for wrongful death and received a favorable 
settlement. ATOFINA seeks indemnification for its share of the settlement from 
one of Triple S’s insurers, Evanston Insurance Company.
 
I.          
Background
 
A.                 
The Relevant Agreements
 

The contract 
between ATOFINA and Triple S required Triple S to indemnify ATOFINA 
against personal injuries and property losses sustained during the performance 
of the contract, unless those losses were attributable to ATOFINA’s concurrent 
or sole negligence.[2] To that end, Triple S 
agreed to carry at least $500,000 in comprehensive general liability ("CGL") 
insurance for each occurrence of bodily injury or property damage covered by the 
indemnity provision.
In addition, 
Triple S was required to maintain at least $500,000 in excess (or 
"umbrella") insurance. The contract between ATOFINA and Triple S specified 
that the excess policy was to be a “following form” policy, meaning that the 
excess policy would insure exactly the same types of liabilities as the CGL 
policy. Finally, Triple S also agreed to name ATOFINA as an “additional 
insured" on both the CGL and excess insurance policies.
Triple S 
purchased $1 million in CGL coverage from Admiral Insurance Company, thus 
satisfying the primary insurance responsibility under its contract with ATOFINA. 
The Admiral CGL policy listed ATOFINA as an additional insured but specifically 
excluded from coverage any liability arising from ATOFINA’s sole negligence.[3] As for excess insurance, 
Triple S purchased a $9 million policy from Evanston, more than satisfying 
the minimum coverage requirement of $500,000. 
The Evanston 
excess policy contains two relevant definitions of who is an insured under the 
policy. First, under section III.B.5 of the policy, an insured is
 
[a]ny . . . person 
or organization who is insured under a policy of “underlying insurance.” The 
coverage afforded such insureds under this policy will be no broader than the 
“underlying insurance” except for this policy’s Limit of Insurance.
 
Second, under 
section III.B.6 of the policy, an insured may also be
 

[a] person 
or organization for whom [Triple S has] agreed to provide insurance as is 
afforded by this policy; but that person or organization is an insured only with 
respect to operations performed by [Triple S] or on [Triple S’s] 
behalf, or facilities owned or used by [Triple S].
 
ATOFINA 
qualifies as an insured under both provisions.
B.        
The Jones Accident and Procedural History
Matthew Todd 
Jones, a Triple S employee working at the ATOFINA facility pursuant to the 
contract, drowned after he fell through the corroded roof of a storage tank 
filled with fuel oil. Jones’s relatives sued Triple S and ATOFINA for 
wrongful death, and ATOFINA initially sought insurance coverage from Admiral (as 
the primary insurer for the contract between Triple S and ATOFINA).
Admiral 
quickly tendered its $1 million policy limit to ATOFINA. Hoping to recover any 
additional costs, ATOFINA also claimed insurance coverage as an "additional 
insured" under Triple S’s umbrella policy with Evanston. Evanston denied 
the claim, and ATOFINA impled Evanston as a third-party defendant seeking a 
declaration of coverage. ATOFINA later severed its suit against Evanston from 
the remainder of the Jones litigation and amended its complaint to assert a 
breach of contract claim. Both parties moved for partial summary judgment. While 
the motions were pending, ATOFINA settled the wrongful death litigation for 
$6.75 million and continued to seek recovery of the remaining $5.75 million from 
Evanston.

The trial 
court granted summary judgment in favor of Evanston. The court of appeals 
reversed, holding that ATOFINA was covered under the Evanston policy. 104 S.W.3d 
247, 250-52 (Tex. App.–Beaumont 2003, pet. filed). It then remanded the case for 
a determination of penalties and attorney’s fees. Id. at 252. The court 
of appeals began its analysis by observing that Triple S’s agreement to 
purchase insurance (and thus name ATOFINA as an “additional insured”) was not 
limited to insuring only the indemnity obligation. Id. at 250. If this 
were the case, the court noted, the insurance requirement would likewise be 
limited only to the indemnity liability. Id. 
“But where 
the additional insured provision stands separately from the indemnity provision, 
and is essentially a free‑standing insurance purchasing requirement, the scope 
of the insurance requirement is not limited by the indemnity clause.” Id. 
As the court noted, 
 
The 
contractual requirement that the insurance to be obtained by Triple S 
include insurance coverage for the indemnity obligation does not exclude 
other excess insurance coverage.
 
Id. 
(citations omitted). Thus, the court concluded that the insurance purchasing 
requirement in the Triple S / ATOFINA contract required Triple S to 
provide insurance for ATOFINA to the same extent Triple S had insurance 
coverage. Id. The net result of the court’s holding is that ATOFINA’s 
coverage under the Evanston policy is essentially the same as if it were the 
primary insured.
II.        
Analysis
As Evanston 
is the defendant here, the salient inquiry is not what the insurance purchasing 
agreement required Triple S to do for ATOFINA, but rather what coverage the 
Evanston policy actually provided. More specifically, does the Evanston policy 
provide coverage for ATOFINA’s acts of negligence?

ATOFINA 
claims coverage for its negligence by virtue of its insured status under section 
III.B.6 of the Evanston policy which, as we have already noted, provides that an 
“insured” under the policy includes “[a] person or organization for whom 
[Triple S has] agreed to provide insurance.” It is undisputed that 
Triple S agreed to provide excess insurance to ATOFINA. Thus, the question 
before us is one of scope. In other words, we must determine what, if any, 
limits exist upon the coverage afforded by the broadly-worded language in 
section III.B.6.
In the 
proceedings below, Evanston and the court of appeals focused on one particular 
source of limitation: the indemnity agreement between Triple S and ATOFINA. 
Evanston argued that section III.B.6, although appearing broad enough to cover 
ATOFINA’s negligence, was necessarily limited in scope by the indemnity 
agreement between ATOFINA and Triple S. And as we have seen, the indemnity 
agreement specifically excluded any acts of ATOFINA’s sole negligence. The court 
of appeals disagreed, holding that the “additional insured” provision was not 
limited to covering only the liabilities reflected in the indemnity agreement. 
104 S.W.3d at 250.
While the 
indemnity agreement is relevant to determining what the parties intended 
with respect to the scope of the indemnity obligation, an insurance policy 
secured to insure that obligation stands on its own. To the extent the insurance 
policy fails to satisfy the indemnity obligation, the obligor (Triple S) 
remains exposed. 

But there is 
no conflict here between what the indemnity agreement requires and what the 
insurance policy provides. The Evanston policy provides in section III.B.5 that 
“[t]he coverage afforded [to ATOFINA] under this policy will be no broader than 
the ‘underlying insurance’.” So, looking to the underlying policy to determine 
the scope of Evanston’s coverage, we find that the Admiral CGL policy 
specifically excludes coverage for ATOFINA’s sole negligence. See supra 
note 3. Because the Evanston policy covered only the liabilities reflected 
in the underlying CGL policy, it cannot be reasonably interpreted to cover 
ATOFINA’s sole negligence.[4]
We recognize 
that ATOFINA asserts coverage under section III.B.6 of the Evanston policy, 
which does not limit the coverage afforded to an insured to that provided by an 
underlying policy. However, we believe that sections III.B.5 and III.B.6 cannot 
be read in isolation. See State Farm Life Ins. Co. v. Beaston, 907 S.W.2d 
430, 433 (Tex. 1995) (noting that “courts must be particularly wary of isolating 
from its surroundings or considering apart from other provisions a single 
phrase, sentence, or section of a[n insurance] contract”). By its express 
language, section III.B.5 applies to the facts of this case. We cannot ignore 
the limitations in this section simply because section III.B.6 (which 
contemplates a separate, although equally applicable, set of circumstances) is 
also implicated.

Having 
determined that ATOFINA is not covered by the Evanston policy for its own acts 
of negligence does not, however, end the matter. On the record before us, we are 
unable to determine as a matter of law whether the Jones accident was the 
product of ATOFINA’s sole negligence. The Jones family originally sued both 
ATOFINA and Triple S, alleging both parties were negligent. In addition, 
there were allegations in ATOFINA’s pleadings that Jones himself was 
contributorily negligent. Triple S was eventually non-suited, and the 
Jones’s claim against ATOFINA was settled with no admission of liability by 
either party. Thus, without a determination of liability, it is impossible to 
say whether ATOFINA’s responsibility for the accident, if any, excluded it from 
coverage under the Evanston policy. Since the policy only excludes ATOFINA’s 
sole negligence from coverage, we must remand this case to the trial court for a 
determination of the respective liabilities of the parties.[5] 
III.       
Conclusion
We reverse 
the judgment of the court of appeals in favor of ATOFINA and remand the matter 
to the trial court for proceedings consistent with this opinion. 
 
_____________________________
PAUL W. 
GREEN
JUSTICE
 
OPINION DELIVERED: May 5, 
2006




[1] ATOFINA is the successor company to FINA Oil and 
Chemical Company, which originally executed the independent contractor agreement 
with Triple S. For purposes of this opinion, we shall refer to FINA and 
ATOFINA, without distinction, as ATOFINA. 

[2] The indemnity provision provided, in relevant 
part:
 
[Triple S] agrees to hold 
[ATOFINA] . . . harmless from . . . each 
and every claim . . . arising out of any injury (including 
death) to persons, including [Triple S’s] 
employees . . . occasioned in any way 
by . . . the actions or omissions of 
[Triple S] . . . , except to the extent that any such 
loss is attributable to the concurrent or sole negligence, misconduct, or strict 
liability of [ATOFINA]. 

[3] Endorsement 20 to the Admiral CGL policy provided as 
follows:
 
WHO IS AN INSURED (Section II) is amended to include as 
an insured [ATOFINA], but only with respect to liability arising out of 
[Triple S’s] ongoing operations performed for [ATOFINA], but in no event 
for [ATOFINA’s] sole negligence. 

[4] ATOFINA contends Evanston waived any argument regarding 
the impact of Afollowing form” language in the insurance purchasing 
agreement by failing to raise this point in its cross-motion for summary 
judgment. While Evanston did not articulate this argument in precisely the same 
form as it is enunciated here, we note that Evanston did in fact argue before 
the trial court that the scope of its policy was bounded by the sole-negligence 
exclusion contained in the Admiral CGL policy. Furthermore, as the party that 
prevailed in the trial court, Evanston was not required to raise this issue 
before the court of appeals, as we do not normally require a party defending a 
judgment to raise every alternative theory on which the trial court could base 
its action. See Williams v. Khalaf, 802 S.W.2d 651, 658 (Tex. 1990). 


[5] Because the coverage issue is potentially dispositive 
to this case, we do not address the parties’ additional issues regarding the 
applicability of article 21.55 of the Texas Insurance Code and the 
reasonableness of the settlement between Triple S and the Jones family.