Opinion issued January 8, 2004













In The
Court of Appeals
For The
First District of Texas




NO. 01-02-01005-CV




ERIC CHEN AND ELLIOT EVANS, Appellants

V.

MICHAEL TSENG, Appellee




On Appeal from the 189th District Court
Harris County, Texas
Trial Court Cause No. 2001-60670




MEMORANDUM OPINION
           This is an appeal of a judgment declaring, among other things, that (1) various
purported board members were not duly and lawfully elected as members of the board of
directors of Chong Hua Sheng Mwu Gwung Committee, Inc. (the Corporation), a corporation
organized under the Texas Non-Profit Corporation Act;


 (2) appellant Eric Chen was never
duly and lawfully elected as a member of the board of directors of the Corporation; (3) Chen
and co-defendant Elliot Evans had no legal right to reside in the temple, but were entitled to
visit and worship in the temple; (4) any actions taken by Chen or Evans on behalf of the
Corporation were performed without authority and were null and void ab initio; and (5) the
only remaining directors of the board of directors were appellee, Michael Tseng (Tseng), and
Lienti Jen.


 The judgment also permanently enjoined Chen and Evans from usurping the
rights, powers, and duties of Tseng as a director and officer of the Corporation, disturbing
the orderly worship in the temple, using or threatening to use force or violence against the
plaintiffs or members of the temple, assuming or attempting to perform any duties as officers
of the Corporation, taking any of the Corporation’s documents, assuming physical control
of the temple premises, and using or attempting to use the temple property as collateral or
encumbering or attempting to encumber the temple property in any manner. The judgment
awarded the Corporation $95,268.86 in damages for conversion of funds from the
Corporation’s bank account and attorney’s fees in the amount of $150,000 for trial, $30,000
if appealed to the court of appeals, and $15,000 if appealed to the Texas Supreme Court. The
damages and attorney’s fees were awarded against Chen and Evans jointly and severally. A
take-nothing judgment was rendered on Chen’s and Evans’s counterclaims.


 In three issues,
Chen contends that the trial court erred (1) in finding that the Corporation was governed by
its bylaws rather than the Patriarch’s religious authority, (2) in appointing Tseng and Lienti
Jen as directors of the Corporation, and (3) in violating the Corporation’s and Chen’s rights
to religious freedom under the First Amendment to the U.S. Constitution and the Texas
Religious Freedom Act.


 Chen does not challenge the damages or attorney’s fees awarded
to the Corporation. We affirm.
BACKGROUND
The Corporation
           This is a dispute among certain followers of the Tien Tao religion, an ancient belief
system with its roots in China. These followers believe in a supreme being, Lao Mu, and,
until his death, recognized Fat Fan Cheung as Patriarch Qian Ren, or The Master. 
           In October 1992, some members of the Tien Tao religion formed the Corporation for
the purpose of building a temple in Houston, Texas. The incorporators and initial members
of the board of directors were Tseng, Lienti Jen, and Charles Chen. According to the bylaws
of the Corporation, an annual meeting of the members of the Corporation was to be held on
the second Tuesday of December of each year for the purpose of electing directors and for
the transaction of other business, and the directors elected at the annual meeting were to hold
a meeting within 30 days after the annual meeting for the purpose of electing officers and
transacting other business. The bylaws provided that directors would hold office until the
next annual meeting of the members and until a successor was elected, and vacancies could
be filled by a vote of a majority of the remaining directors at any regular or special meeting. 
A director so chosen was to hold office until the next annual meeting of the members. A
director’s resignation was to be effective upon written notice delivered to the chairman of
the board, president, secretary, or board of directors, unless the notice specified a later time. 
           A meeting of the members was held on July 18, 1993. At that meeting, the members
elected 18 directors, and the directors elected officers, including Tseng as secretary and
Bettina Tseng as treasurer. In conducting the affairs of the Corporation, the directors and
officers consulted with Qian Ren, kept him informed about the Corporation’s affairs, and
generally followed any instructions he gave. However, Qian Ren traveled often, and the
board of directors conducted the business of the Corporation. 
           In 1995, Eric Chen, who had been a follower of Qian Ren since 1991, left his job to
devote his full time to Qian Ren. Chen lived and traveled with Qian Ren and served as an
assistant. In 1998, Tseng, who had been supervising the building of the temple, asked Qian
Ren for help because his responsibilities as director were interfering with his full-time work. 
Qian Ren appointed Chen to assist Tseng. Qian Ren died in March 1999. 
           In May 1999, Chen had Bettina Tseng add Chen’s name as a signatory to the
Corporation’s bank account. In June, Chen and some others “reorganized” the Corporation,
and Chen became president. Chen filed a report with the Secretary of State naming himself
as president of the Corporation, Tseng as vice-president, Bettina Tseng as treasurer, John
Tong as administrator, and Elliott Evans as Secretary. In that report, Chen named himself
as the registered agent of the Corporation and gave his address as that of the temple, in which
Chen was living at the time. 
           Chen transferred $1,000 from the Corporation’s bank account to a money market
account in the Corporation’s name, with Chen as the only signatory. He later added Tong
as a signatory to the account. Over time, Chen transferred as much as $1,000,000, and
possibly more, from the original account to the money market account. 
           On January 11, 2000, a meeting of the members was called without any written notice. 
At that meeting, the Tsengs, who were not present, were removed from office and a new
board and new officers were elected. Chen sent a letter to Tseng, informing him that his
office of vice-president had been eliminated. Chen sent a letter to Bettina Tseng informing
her that her services in the position of treasurer were no longer needed. On January 15, John
Tong, for Wu-Wei Tien Tao Association (Wu-Wei),


 executed a promissory note in favor of
the Corporation for $95,268.86. Tong, as treasurer for Wu-Wei, and Chen, as president of
the Corporation, signed an agreement that this money would be used to buy real property for
use by the Corporation to hold classes and perform activities until the temple was completed. 
After the property was purchased, several members of Wu-Wei used it as a residence. 
           In March 2000, Chen filed a report with the Secretary of State showing Chen as
president, Tong as treasurer, and Evans as Secretary. In December 2000, Chen filed an
amendment to the articles of incorporation with the Secretary of State, changing the name
of the Corporation to Chong Hua Sheng Mu Gong. In November 2001, a report to the
Secretary of State listed eight officers of the Corporation, including Chen as secretary and
Tong and Evans as officers. 
           In January 2002, Tseng, Bettina Tseng, and Shean Wang, all acting as directors of the
Corporation, called for a special meeting of the board of directors to discuss corporate
governance issues.


 Tseng, as board secretary, gave notice of the meeting to the 18 directors
elected at the July 1993 meeting. The meeting was held on January 23, 2002, and new
officers were elected, including Tseng as vice-president and Bettina Tseng as treasurer. At
this meeting, Lienti Jen and two other directors resigned, conditioned on the effective
election of their replacement. Three new directors were elected to fill the vacancies. 
The Lawsuit
           In November 2001, Shean Wang, Alex Luk, Bettina Tseng, and Tseng, as members
of the board of directors, and Agatha Yang, as a member of the Corporation, sued the
Corporation and Chen and Evans individually. The plaintiffs alleged that, in 1999, Chen and
Evans exercised unlawful domination over the Corporation and refused to allow the plaintiffs
access to the temple or the corporate records. Plaintiffs requested temporary injunctive relief
ordering Chen and Evans to provide the corporate documents and financial records to
plaintiffs and to remove Chen and Evans from any position of authority and control of the
Corporation. Plaintiffs also requested a hearing for permanent injunctive relief. 
           Plaintiffs’ amended petitions requested a permanent injunction; declaratory relief
regarding the validity of various elections and appointments and regarding the validity of
actions taken by Chen; actual damages for conversion, trespass, and conspiracy; exemplary
damages; and attorney’s fees. In addition, the parties were realigned so that the Corporation
became a plaintiff. After a four-day bench trial, the trial court gave the plaintiffs declaratory
relief, declaring that the elections of the board members and officers in 1993 and 2002 were
not lawful; that Chen, Evans, Tong, and Scott Milhoan had never been duly and lawfully
elected as directors or officers of the Corporation; and that Tseng and Jen, as the only
remaining directors of the original board, had the sole authority to be signatories on the
Corporation’s bank accounts.


 The trial court also enjoined Chen and Evans from usurping
the duties of Tseng as a director or in any other way taking control of the Corporation. The
trial court awarded monetary damages and attorney’s fees to the Corporation against Chen
and Evans. 
DISCUSSION
Pending Motions
           Chen has filed with this Court a motion for contempt to enforce the final judgment. 
Chen requests that Tseng be held in contempt for not allowing Chen and those aligned with
him access to the temple on certain religious festival days and limiting access to certain days
and times. With respect to Chen’s access to the temple, the final judgment provides, “At this
time, Elliot Evans and Eric Chen are entitled to visit and worship in the Temple.” The
judgment does not include any order requiring that Tseng give Chen access on particular days
or at particular times. Chen’s motion concedes that he has been given times for access to the
temple. Chen’s complaint that “no other unauthorized siblings” will be allowed in the temple
is without merit. The judgment only states that Chen and Evans may visit and worship in the
temple. Because Tseng has given Chen access to the temple, he cannot be held in contempt
of court. We deny Chen’s motion for contempt. We also deny Tseng’s motion for sanctions
and motion to strike Chen’s exhibits.


 Any other pending motions are denied as moot.
Chen’s Appeal
           Chen does not challenge the monetary judgment or injunctive relief. In addition, Chen
does not challenge the trial court’s findings that the board members elected in 1993 and in
2002 were not legally elected or that Chen and others were never elected. However, he
contends that the legal authority reverts not to the original directors but to the religious
authority, which he claims to possess through appointment by Qian Ren. 
           Corporate Governance
           In his first issue, Chen contends that the trial court erred in finding that the
Corporation was governed by its bylaws rather than by the Patriarch Qian Ren’s religious
authority. Chen argues that, although the trial court correctly found that the board members
elected or appointed between 1993 and 2002 did not have legal authority under the bylaws,
the members and directors had waived the bylaws and were estopped to enforce the bylaws
by acquiescing to the religious authority of Qian Ren. 
           The trial court filed findings of fact and conclusions of law. The trial court made no
findings of fact relating to the issues of waiver or estoppel. If a trial court’s original findings
do not include any findings on a party’s defense, the party relying on that defense must
request additional findings of fact or the defense is waived. Texmarc Conveyor Co. v. Arts,
857 S.W.2d 743, 747 (Tex. App.—Houston [14th Dist.] 2000, no pet.). 
           Chen argues that his proposed findings of fact, which were filed before trial, should
be deemed as prematurely filed, thereby preserving his complaints of waiver and estoppel.


 
He cites no authority to support his implied contention that a prematurely filed request for
findings of fact may be deemed a prematurely filed request for additional findings of fact. 
Rule 298 of the Rules of Civil Procedure provides, “After the court files original findings of
fact and conclusions of law, any party may file with the clerk of the court a request for
specified additional or amended findings or conclusions.” Tex. R. Civ. P. 298. A party
cannot know what specific additional findings and conclusions may be required until after
the court has filed its original findings and conclusions. We conclude that the request for
additional findings of fact must be filed after the trial court files its original findings of fact. 
See Balderama v. Western Cas. Life Ins. Co., 794 S.W.2d 84, 89 (Tex. App.—San Antonio
1990) (holding trial judge not required to file additional findings of fact and conclusions of
law when request made before filing of original findings and conclusions), rev’d on other
grounds, 825 S.W.2d 432 (Tex. 1991). Because Chen did not file a request for additional
findings and conclusions, he has not preserved his complaints regarding waiver and estoppel. 
Accordingly, we overrule Chen’s first issue.
           The Remaining Directors
           In his second issue, Chen contends that the trial court erred in appointing Tseng and
Jen as directors of the Corporation. Under this multifarious issue, Chen also complains that
the trial court named only two directors, that there was no evidence that Tseng and Jen were
current members of the Corporation, that there was no evidence that Tseng and Jen had the
support of the majority of the members, and that the trial court erred in finding Jen had not
resigned when it found that Charles Chen had resigned.
           The trial court did not appoint directors. The trial court found, in effect, that all
directors elected at the meetings of the members in 1993 and 2002, and the individuals who
were otherwise named as directors in the time between those two meetings, were not elected
as directors in accordance with the bylaws and were, therefore, not duly and lawfully elected. 
The trial court then found that Tseng and Jen were “the only remaining Directors of the
original Board of Directors.” We overrule Chen’s complaint relating to the appointment of
directors. 
           Chen complains that the trial court named only two directors, when both the bylaws
and the Texas Non-Profit Corporations Act require a minimum of three. The trial court’s
judgment does not preclude the designation of a third director as provided in the bylaws. We
overrule Chen’s complaint regarding the number of directors.
           Chen asserts that there is no evidence that Tseng or Jen was a current member of the
Corporation. Chen does not challenge their membership in 1992 when they were two of the
original three directors. Membership lists for 1992 and 1993 were admitted into evidence
and showed that Tseng and Jen were members. Their membership in 1992 and 1993 is some
evidence of their continuing membership in the Corporation. 
           Chen contends that a letter from the Tsengs to Chen was conclusive evidence of
Tseng’s intent to resign. That letter stated,
Since when our Master passed away, we have never had any association with
any party or group within any Tien-Tao Association or CHSMG, Inc.
throughout the world. . . .
 
We decided to be an ordinary people. Please understand our little wish and
don’t disturb our peace any more. The language of our letters is plain, but our
hearts are clear and sincere.

           At trial, Tseng testified that, in their faith, people should not associate with a small
group to rival another group, and that, in the letter, he was politely telling Chen that from his
point of view, Chen was gathering such a small group around him. He testified that he was
also saying that he and his wife were simple ordinary people, not perfect and not the holy
one. Tseng also testified that he did not submit a resignation to Chen.
           We hold that Tseng’s letter to Chen is not conclusive proof that Tseng resigned from
the Corporation. We further hold that Tseng’s testimony is some evidence that he did not
resign. We overrule Chen’s legal insufficiency challenge to the trial court’s finding that
Tseng and Jen were the remaining directors. 
           We overrule Chen’s remaining complaints under this second issue. It was
unnecessary for the trial court to determine whether Tseng and Jen had the support of the
majority of the Corporation’s current members because the trial court was not asked to make
such a determination. The trial court’s implied finding that Charles Chen had resigned as a
director was supported by Charles Chen’s unconditional, written notice of resignation. In
addition, the trial court’s implied finding that Jen had not resigned as a director was
supported by Jen’s written resignation, which was conditioned on the election of his
replacement, and the trial court’s finding that the replacement was not lawfully elected.
           Chen’s complaints regarding Tseng and Jen as remaining directors are without merit. 
We overrule Chen’s second issue. 
 

           Religious Freedom
           In his third issue, Chen contends that the trial court violated the Corporation’s and
Chen’s rights to religious freedom under the First Amendment and the Texas Religious
Freedom Act. Chen argues that (1) the judgment disregards the right of a hierarchical church
to govern its internal affairs and that the trial court incorrectly categorized the Corporation
as a congregational church; (2) the trial court found that Mu Yee, the “human descent” of the
supreme being Lao Mu, cannot live in the temple; (3) the judgment fails to preserve Chen’s
right to minister in the temple; and (4) the judgment permits the board to control the Tien Tao
religion. 
           The Corporation was aligned with the plaintiffs at trial and was awarded a money
judgment against Chen. A corporation can conduct business only through natural persons. 
Household Credit Servs., Inc. v. Driscol, 989 S.W.2d 72, 82-83 (Tex. App.—El Paso 1998,
pet. denied). Chen is not an officer or director of the Corporation and does not have standing
to assert error on its behalf.


 We therefore consider Chen’s third issue only as it relates to
him. 
           Trial courts are prohibited under the First Amendment from interfering in religious
or ecclesiastical matters affecting a religious organization. See Serbian E. Orthodox Diocese
v. Milivojevich, 426 U.S. 696, 708-09, 724-25, 96 S. Ct. 2372, 2380, 2387-88 (1976). This
is true whether the organization’s governance is hierarchical or congregational.


 However,
the civil courts have jurisdiction over matters involving civil, contract, or property rights as
long as neutral principles of law may be applied to decide the issues. Dean v. Alford, 994
S.W.2d 392, 395 (Tex. App.—Fort Worth 1999, no pet.). 
           The issues in this case involve property rights. Chen concedes that the trial court
applied neutral principles of law in interpreting and applying the Corporation’s bylaws. 
These bylaws governed the Corporation, not the religious group. The trial court merely
applied the bylaws to make a determination of the validity of the selection of directors of the
Corporation. 
           Contrary to Chen’s argument, the trial court did not find that Mu Yee cannot live in
the temple. The temple had not been completed at the time of trial. The trial court found,
“No one has permission to live in the Temple.” That is not to say that, at a later time,
someone may not have such permission. 
           The final judgment neither preserves nor interferes with Chen’s right to minister in
the temple. The judgment recognized Chen’s entitlement to visit and worship in the temple. 
However, a determination of who has the right to minister and to keep the altar is
ecclesiastical in nature, and the trial court had no jurisdiction to make such a determination.
           Finally, Chen contends that, by giving the board the right to determine membership
in the Corporation, the trial court has given the board the right to control the Tien Tao
religion. Chen does not direct us to any finding of fact or conclusion of law that grants the
board the right to determine membership in the Corporation. Such membership is determined
according to the bylaws. Furthermore, the trial testimony established that membership in the
Corporation and membership in the Tien Tao religion are not coextensive. Therefore, even
if the board controls the corporate membership, it does not control membership in the
religious group. 
           We overrule Chen’s third issue. 
CONCLUSION
           We affirm the judgment of the trial court.
 
                                                                  Sam Nuchia
                                                                  Justice

Panel consists of Justices Nuchia, Higley, and Hedges.